OPINION
Defendant-appellant, Dana E. Evans, was indicted by the Franklin County Grand Jury on six counts, including felonious assault, aggravated burglary with a firearm specification, possession of a dangerous ordnance, aggravated robbery and two counts of possession of a weapon while under a disability. The trial court granted a Crim.R. 29 motion for acquittal as to the aggravated burglary charge and the jury found appellant guilty of felonious assault, possession of a dangerous ordnance and aggravated robbery. The weapons under disability charges were tried to the court. Appellant made a motion for acquittal as to Count Four, having a weapon under disability, alleging that the prosecution failed to prove that appellant committed the offense within five years of his release from imprisonment on a first or second degree felony. The court overruled the motion and found appellant guilty of both Counts Four and Five, the weapons charges.
The indictment was the result of events which occurred on March 24, 2001. At the trial, Sheron Scurry testified that he lives at 305 Mix Avenue, Apartment B, and, on March 24, 2001, he was taking his trash to the dumpster outside his apartment when he passed a car in the parking lot. Appellant was sitting on the front bumper of the car drinking alcohol. Appellant made a remark regarding Scurry's physique and prison and Scurry stated he told appellant to "get out of my face." (Tr. at 21.) Scurry testified that appellant then slammed his drink down on the car and stated: "I see this nigger wants to fight." (Tr. at 21.) Appellant took a swing at Scurry but missed, and Scurry hit appellant. Scurry testified that appellant pulled something out of his pocket that Scurry could not identify but he described it as a sharp object, and appellant attempted to strike at Scurry with it. Scurry then went into his house and retrieved a metal bar from one of his child's toys and went back outside.
By that time, appellant had left the parking lot but was inside the car, stopped on Mix Avenue. Scurry stepped in front of the car in an attempt to get appellant to exit the car. Scurry testified that appellant tried to hit him with the car. Although Scurry testified that he knew he could get out of the way of the car, it did get within three or four inches of him. Scurry testified that appellant sped away, smiled and stated: "I'll be back." (Tr. at 52.) Scurry left to meet his girlfriend and, when he returned, a crowd had gathered outside the apartment building and people told him not to go inside. He called the police.
Several deputy sheriffs also testified at the trial. They were dispatched to 305 Mix Avenue, Apartment C, because of a report there was a man with a sawed-off shotgun inside the apartment. When they approached Apartment C, the door was open and, when they opened it further, they saw appellant standing in the doorway with a shotgun in his hand. After two or three commands to drop the weapon, appellant did so and the deputies attempted to put handcuffs on him. A struggle ensued and appellant unsnapped one of the deputies holsters, grabbed the grip of the gun and pulled. Appellant was subdued, handcuffed and taken to the cruiser.
After being found guilty and sentenced, appellant filed a notice of appeal and raises the following assignments of error:
ASSIGNMENT OF ERROR NO. 1:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO SUSTAIN DEFENDANT-APPELLANT'S MOTION FOR DISMISSAL OF COUNT ONE, FELONIOUS ASSAULT, PURSUANT TO RULE 29, OHIO RULES OF CRIMINAL PROCEDURE, MADE AT THE END OF THE STATE'S CASE AND DEFENDANT-APPELLANT'S CASE, THERE BEING INSUFFICIENT EVIDENCE TO SUPPORT THE CHARGE.
ASSIGNMENT OF ERROR NO. 2:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ALLOWING THE ASSISTANT PROSECUTOR TO INTRODUCE INFLAMMATORY HEARSAY TESTIMONY REGARDING A DANGEROUS ORDINANCE (sic) ON MORE THAN ONE OCCASION, TO INFLAME THE PASSIONS AND PREJUDICE THE JURY.
ASSIGNMENT OF ERROR NO. 3:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO SUSTAIN DEFENSE COUNSEL'S OBJECTION TO THE COURT'S CHARGE AS TO DANGEROUS ORDINANCE [sic].
ASSIGNMENT OF ERROR NO. 4:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO SUSTAIN DEFENDANT-APPELLANT'S RULE 29 MOTION AS TO COUNT NUMBER FOUR, WEAPON UNDER DISABILITY, HAVING BEEN RELEASED FROM PRISON WITHIN FIVE (5) YEARS, PURSUANT TO SECTION 2923.13, OHIO REVISED CODE.
ASSIGNMENT OF ERROR NO. 5:
 THE TRIAL COURT ERRED IN ADMITTING STATE'S EXHIBITS A AND B, THE SAWED-OFF SHOTGUN, THE STATE HAVING FAILED TO MAINTAIN THE CHAIN OF EVIDENCE.
ASSIGNMENT OF ERROR NO. 6:
 THE DECISION OF THE JURY AS TO COUNTS ONE AND SIX ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ARE NOT SUPPORTED BY THE EVIDENCE.
ASSIGNMENT OF ERROR NO. 7:
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN THE COURT REFUSED TO CHARGE ON THE INFERIOR DEGREE OR LESSER INCLUDED OFFENSE OF RESISTING ARREST.
By the first assignment of error, appellant contends that the trial court erred and abused its discretion in failing to sustain appellant's Crim.R. 29 motion for dismissal of Count One, felonious assault, because there is insufficient evidence to support the charge. The standard of review for sufficiency of the evidence is if, while viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
R.C. 2903.11(A)(2) provides, as follows:
 (A) No person shall knowingly do either of the following:
* * *
 (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance.
R.C. 2901.22(B) defines "knowingly" as follows:
 (B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
"Deadly weapon" is defined in R.C. 2923.11(A), as follows:
 (A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.
An automobile may be classified as a deadly weapon because it is capable of inflicting death when it is used in a manner likely to produce death or great bodily harm. When determining whether an automobile is a deadly weapon, a court should consider the intent of the user, the nature of the weapon, the manner of its use, the actions of the user and the capability of the instrument to inflict death or serious bodily injury. State v. Gimenez (1997), Cuyahoga App. No. 71190, citing State v. Upham (1997), Butler App. No. CA96-08-157. The determination of whether an automobile was used as a deadly weapon is a question of fact for the trier of fact. Id.
In this case, Scurry repeatedly testified that appellant tried to hit him with the car. He stated that the car was driven within three or four inches of him. He also testified that he believed that appellant was drunk and, when appellant was in the car and attempting to hit Scurry, appellant told Scurry to step in front of the car. After that, appellant smiled, drove the car away in a rush and stated: "I'll be back." (Tr. at 52.) These actions indicate that appellant knowingly drove the car in a manner such that he used it as a weapon capable of inflicting death. Thus, there is sufficient evidence, viewing the evidence in a light most favorable to the prosecution, for a rational trier of fact to have found the essential elements of the crime proven beyond a reasonable doubt. The trial court did not err in failing to sustain appellant's Crim.R. 29 motion for dismissal of the felonious assault charge. Appellant's first assignment of error is not well-taken.
By the second assignment of error, appellant contends that the trial court erred and abused its discretion in allowing the state to introduce inflammatory hearsay testimony regarding a dangerous ordnance on more than one occasion so as to inflame and prejudice the jury. The first instance involved the testimony of one of the deputy sheriffs, as follows:
 A. Like I said, we were met by an individual who stated that there was a subject in Apartment C with a shotgun that had just threatened him and was threatening individuals in the apartment.
 MR. SWOPE: Your honor, I am going to object to that part of it. He's reiterated why he was going up there. The balance of that is pure hearsay, and I would ask that it be stricken from the record and the jury be told to disregard that part of the statement. [Tr. at 60.]
Appellant argues that the trial court also erred in admitting hearsay testimony as follows:
 A. * * * We were met by several people, five or 10 people, at least.
Q. Did those people appear to be excited?
A. Yeah. They were all frantic, yelling and screaming.
Q. And what were they yelling and screaming to you?
MR. SWOPE: Object. Object.
THE COURT: Overruled.
 A. That they were "There's a man with a gun that just went into an apartment upstairs." [Tr. at 72.]
Appellant also contends that the court erred in permitting a deputy sheriff to testify regarding screams he heard.
The last instance that appellant contends was error involved the prosecution's cross-examination of a defense witness in which the witness was asked hypothetical questions, as follows:
 Q. If he was in your house waving a sawed-off shotgun around
 MR. SWOPE: I'm going to object. There's no evidence he did that. I am going to object to that. It's totally inappropriate.
 MR. MITCHELL: I am just asking for perspective, Your Honor.
THE COURT: Overruled.
MR. MITCHELL: Thank you, Your Honor:
 Q. (By Mr. Mitchell) If he was in your house waving around a sawed-off shotgun and wouldn't drop it or give it up, what would you do? Would you call the police?
 A. I don't think he would ever wave a sawed-off shotgun in my house because he don't like weapons to be around my two minor children.
 Q. But if he was in someone else's house with a sawed-off shotgun, would you think that that would be a bad thing that police were called?
 MR. SWOPE: I'm going to object and ask for a continuing objection.
THE COURT: Overruled.
 A. It wouldn't be a bad thing that police were called, but, like I say, I don't think he would do anything like that. [Tr. at 138.]
The trial court has broad discretion in the admission or exclusion of evidence and, in the absence of an abuse of discretion which results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. Krischbaum v. Dillon (1991), 58 Ohio St.3d 58,66. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Evid.R. 401. Evid.R. 402 provides that all relevant evidence is admissible. Even if the evidence is relevant, it must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, misleading the jury or confusion of the issues. Evid.R. 403(A); State v. Whiteside (1996), Franklin App. No. 95APA08-1092. In State v. Thomas (1980), 61 Ohio St.2d 223, 232, the Supreme Court of Ohio stated that "extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." When the testimony is offered to explain the subsequent investigative or other activities of the witnesses and not offered to prove the truth of the matter asserted, the testimony is admissible. Id.
In this case, the first instance that appellant contends was error involved the testimony of one of the deputy sheriffs. The testimony was offered to explain why the deputies responded to the scene and was not offered for the truth of the matter asserted. The court gave a cautionary instruction immediately before the testimony explaining the testimony was provided to explain why the deputy went to the scene. The jury is presumed to follow instructions given by the court. Pang v. Minch (1990), 53 Ohio St.3d 186.
Similarly, the second instance which appellant contends constitutes error involved the statements made to the deputy sheriff when he arrived at the scene, by the bystanders. This testimony was not offered for the truth of the matter asserted but explained why the deputies proceeded to Apartment C in the manner they did.
The third instance which appellant contends constitutes error involved the screams coming from Apartment C. Appellant argues that the admission of the testimony was improper because no one knows where the screams came from or who was involved; however, the deputy sheriff testified that the screams emanated from Apartment C. One of the deputies testified that he heard someone yelling "[d]rop the gun." (Tr. at 61.) Such evidence explains why the deputies proceeded to Apartment C.
The last instance that appellant contends was error involved the prosecution's cross-examination of a defense witness in which the witness was asked hypothetical questions involving appellant waving a sawed-off shotgun. Appellant argues that the testimony was inadmissible because there was no evidence that appellant waved the shotgun. The witness had testified that appellant had always been nice, respectful and appropriate in front of the woman who lived in Apartment C. The prosecutor then presented a series of hypothetical questions to determine the scope of appropriate behavior as defined by the witness. Even if such evidence was inadmissible, appellant has not demonstrated prejudice in the face of the overwhelming evidence of guilt. Appellant's second assignment of error is not well-taken.
By the third assignment of error, appellant contends that the trial court erred and abused its discretion in failing to sustain defense counsel's objection to the jury instruction regarding dangerous ordnance. The trial court's instruction was as follows:
 The Defendant is charged with possession of a dangerous ordnance. Before you can find the Defendant guilty, you must find beyond a reasonable doubt that on or about the 24th day of March, 2001, in Franklin County, Ohio, the Defendant knowingly possessed or carried a dangerous ordnance.
And I have previously defined knowingly for you.
 Possession is a voluntary act if the possessor knowingly procured or received or was aware of his control for a sufficient period of time to have ended his possession.
 A person has possession when he knows he has the object on or about his person or places it where it is accessible to his use or direction, and he has the ability to direct or control its use.
 Two or more persons may have possession if together they have the ability to control the item * * *[.] [Tr. at 175.]
R.C. 2923.17(A) provides, the following: "No person shall knowingly acquire, have, carry, or use any dangerous ordnance." Appellant argues that, since R.C. 2923.17(A) does not use the word "possession" but, rather, uses "acquire, have, carry or use," the trial court erred by excluding the possibility of the shotgun having been picked up by appellant in the apartment, but "possessed" by another occupant of the apartment.
When determining whether a trial court erred in its jury instructions, an appellate court reviews the instruction as a whole. Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410. A trial court has broad discretion in instructing the jury. State v. Smith (2002), Franklin App. No. 01AP-848.
Given the facts of this case, with two deputies testifying concerning the shotgun appellant was holding when they entered the apartment, the instruction was not misleading and appellant has not demonstrated any prejudice. Courts have construed "possession" and "have" synonymously. For example, in State v. Hardy (1978), 60 Ohio App.2d 325, 327, the court construed the word "have" as used in R.C. 2923.13, to mean that an individual "must either actually or constructively possess" a firearm. The court continued and defined "actual possession" as requiring "ownership and, or, physical control." The court found that "constructive possession may be achieved by means of an agent." A similar result was found in State v. Gibson (1993), 89 Ohio App.3d 188. Although those cases involved a different statute, several cases have also applied this definition of "have" to R.C. 2923.17. See State v. Butler (1987), Cuyahoga App. No. 53785; State v. Pearson (1986), Cuyahoga App. No. 50009. Appellant's third assignment of error is not well-taken.
By the fourth assignment of error, appellant contends that the trial court erred in failing to sustain his Crim.R. 29 motion as to Count Four. Appellant was charged in Count Four with having a weapon while under disability, a violation of R.C. 2923.13(B), a felony of the third degree, based on an allegation that he was convicted of aggravated robbery, a felony of the first degree, in 1990, and committed the instant offense within five years of his release from imprisonment or from post-release control for that offense. In Count Five, appellant was charged with having a weapon under disability, a violation of R.C.2923.13(A), a felony of the fifth degree, because he had been convicted of a felony of violence in 1982, conspiracy to commit burglary.
R.C. 2923.13 provides, in part, as follows:
 (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
 (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence.
* * *
 (B) No person who has been convicted of a felony of the first or second degree shall violate division (A) of this section within five years of the date of the person's release from imprisonment or from post-release control that is imposed for the commission of a felony of the first or second degree.
Appellant's attorney argued that the prosecution failed to prove that appellant possessed a dangerous ordnance within five years of being released after a conviction of a first or second degree felony. Initially, the prosecutor agreed and stated as follows:
 * * * Your Honor, the State will admit that the first part of Mr. Swope's argument is well taken. I did attempt to establish when he was released. I was just simply unable to come up with that information after a lot of time on the phone. So it is the State's position that that particular aspect of Count Four should be nolle prosequied, or should be dismissed by the Court, apparently. [Tr. at 202.]
However, the prosecutor also argued:
 * * * But it's also our position that that aspect, the five-year release date, is merely surplusage that appears on the end of Count Four, that if the Court eliminates that language, having no alternative but to find the Defendant not guilty of that, a
* * *
 — [F]elony of the fifth degree still remains. Obviously, that means that Count Four and Count Five are virtually identical, at which point I think the Court, if the Court chooses to, one, find the Defendant guilty of this, and chooses the sentence, probably the Court has to run those sentences concurrently, but as far as the identification procedures, it is certainly our posture that that identification was very clear and obvious, and he should be found guilty of those two counts, however reduced they should be. [Tr. at 202-203.]
The trial court then found appellant guilty of both Counts Four and Five and sentenced him to one year for each count to be served consecutively.
The state argues that a violation of R.C. 2923.13(A) is a lesser included offense of R.C. 2923.13(B) and, even though the prosecution failed to prove appellant's release date, a necessary element under R.C.2923.13(B), the trial court could still convict appellant under Count Four for the lesser included offense under R.C. 2923.13(A).
Pursuant to Crim.R. 31(C), a defendant may be found not guilty of the degree of offense charged but guilty of an inferior degree thereof, or of a lesser included offense, if the indictment, information, or complaint "charges an offense including degrees, or if lesser offenses are included within the offense charged"; however, Crim.R. 31(C) only applies when the amended charge is a lesser included offense of the indicted charge.
The Supreme Court of Ohio has set forth the test for determining whether an offense is a lesser included offense of another in State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus, as follows:
 An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense. * * *
R.C. 2923.13(A) carries a lesser penalty than R.C. 2923.13(B), R.C.2923.13(B) cannot be committed without committing R.C. 2923.13(A), and R.C. 2923.13(B) requires proof of an additional element, that is, the defendant committed a violation of R.C. 2923.13(A) within five years of the date of the person's release from imprisonment or from post-release control for the commission of a felony of the first or second degree. Thus, R.C. 2923.13(A) is a lesser included offense of R.C. 2923.13(B).
In this case, appellant was also charged in Count Five of the indictment with a violation of R.C. 2923.13(A). Count Four involved a disability stemming from possession of a weapon within five years of his release following an aggravated robbery conviction in 1990, and Count Five, involved a disability stemming from a conspiracy to commit burglary conviction from 1982.
R.C. 2941.25, Ohio's allied offense statute, protects against multiple punishments for the same criminal conduct which could violate the Double Jeopardy Clauses of the United States and Ohio Constitutions. R.C. 2941.25
provides, as follows:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where this conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Under R.C. 2941.25, a two-tiered test must be applied to determine whether two or more crimes are allied offenses of similar import. The first step requires a comparison of the elements of the two crimes to determine whether they correspond to such a degree that the commission of one crime results in the commission of the other crime. If so, the crimes are allied offenses of similar import. The second step requires the court to review the defendant's conduct to determine whether the offenses were committed separately or whether there was a separate animus for each offense, and, if so, the defendant may be convicted of both offenses. Newark v. Vazirani (1990), 48 Ohio St.3d 81, syllabus, approving and following State v. Blankenship (1988), 38 Ohio St.3d 116,117.
In State v. Woods (1982), 8 Ohio App.3d 56, the court recognized that the division of singular conduct into multiple offenses is prohibited by R.C. 2941.25(A). Several courts have held that simultaneous possession of multiple guns constitutes a single offense. See Woods; State v. Thompson (1988), 46 Ohio App.3d 157; State v. Pitts (2000), Scioto App. No. 99CA2675; and State v. Jones (1991), Washington App. No. 89CA23. Similarly, here, we find these counts were allied offenses and appellant could only be convicted of one of them. Appellant's fourth assignment of error is well-taken.
By the fifth assignment of error, appellant contends that the trial court erred in admitting the sawed-off shotgun without the state having maintained a proper chain of evidence. Although the prosecution bears the burden of establishing a proper chain of custody, that duty is not absolute. State v. Blevins (1987), 36 Ohio App.3d 147, 150, citing State v. Moore (1973), 47 Ohio App.2d 181. "A strict chain of custody is not always required in order for physical evidence to be admissible." State v. Wilkins (1980), 64 Ohio St.2d 382, 389. The prosecution needs to establish that "it is reasonably certain that substitution, alteration or tampering did not occur." Blevins, at 150. Breaks in the chain of custody do not affect the admissibility of evidence but, rather, the weight to be afforded such evidence. Id.
In this case, two deputies identified the sawed-off shotgun at trial as the shotgun in appellant's possession on March 24, 2001. One of the deputies testified that he had taken the shotgun from appellant that night and copied its serial number onto a bag and then impounded the shotgun into the bag and sealed the bag. He testified that the serial number on the shotgun at trial was the same number that appeared on his impound notes. A third deputy testified that he observed the range officer in charge of firearms test fire the gun with the same serial number and it was operable.
Thus, the prosecution established that it is reasonably certain that substitution, alteration or tampering did not occur and the shotgun at trial is the same as the one that was taken from appellant on March 24, 2001. Appellant's fifth assignment of error is not well-taken.
By the sixth assignment of error, appellant contends that the decision of the jury as to Counts One and Six, felonious assault and aggravated robbery, are against the manifest weight of the evidence and not supported by the evidence. The test for whether a judgment is against the manifest weight of the evidence involves a limited weighing of the evidence by the court to determine whether there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt. State v. Conley (1993), Franklin App. No. 93AP-387. In State v. Thompkins (1997),78 Ohio St.3d 380, 387, the Supreme Court of Ohio described the standard of review, as follows:
 * * * Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on the weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's [Law Dictionary (6 Ed. 1990)], at 1594.
Regarding Count One, felonious assault, Scurry testified that appellant swung at him but he had blocked the blow. Then appellant pulled out a sharp object that Scurry could not identify; however, the indictment was based on the assault with the car, not the unidentified sharp object. Scurry repeatedly testified that appellant tried to hit him with the car. He stated that the car was driven within three or four inches of him. He also testified that, when appellant was in the car and attempting to hit Scurry, appellant told Scurry to step in front of the car. After that, appellant smiled, drove the car away in a rush and stated: "I'll be back." (Tr. at 52.) These actions indicate that appellant knowingly drove the car in a manner such that he used it as a weapon capable of inflicting death. Thus, there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt as to the felonious assault.
Appellant also argues that the aggravated robbery verdict is against the manifest weight of the evidence. R.C. 2911.01 provides as follows:
 (B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
 (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;
 (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.
The first deputy sheriff to testify stated that, when the three deputies arrived, one of them kicked the door completely open and appellant was standing in the doorway with a shotgun in his left hand. After two or three commands to drop the weapon, appellant did so and he was pulled into the hallway, away from the weapon to handcuff him. A struggle ensued and appellant was finally subdued on the floor of the apartment where he was handcuffed and then taken to the cruiser.
A second deputy sheriff also testified that appellant seemed upset, angry and a little intoxicated. Appellant was combative while they were attempting to arrest him, "pulling his hands away, jerking around." (Tr. at 78.) The hallway was crowded, so they went back into the apartment and appellant "unsnapped my holster, grabbed the grip of my gun and was pulling on it." (Tr. at 79.) He testified that appellant did not have permission to do so.
Appellant argues that the deputy testified that appellant merely grabbed the handle of the gun; however, the officer's testimony is that appellant unsnapped the holster, grabbed the grip of the gun and pulled on the gun. Given this testimony, there is sufficient, competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt that appellant, without privilege to do so, knowingly attempted to remove the deputy's gun from its holster while the deputy was attempting to arrest appellant.
While not part of his assignment of error, appellant also argues that Count Three, the dangerous ordnance verdict, is against the manifest weight of the evidence. As stated above, R.C. 2923.17(A) provides, the following: "No person shall knowingly acquire, have, carry, or use any dangerous ordnance." Two deputy sheriffs testified that appellant was holding the sawed-off shotgun when the apartment door was opened and it took two or three commands before appellant dropped the weapon. This testimony constitutes sufficient, competent, credible evidence which could convince a reasonable trier of fact that appellant actually or constructively possessed the weapon. Thus, the verdicts are not against the manifest weight of the evidence and appellant's sixth assignment of error is not well-taken.
By the seventh assignment of error, appellant contends that the trial court erred and abused its discretion when it refused to charge the jury on resisting arrest as a lesser included offense of aggravated robbery.
As discussed in the fourth assignment of error, an offense may be a lesser included offense of another if "(i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." Deem, at paragraph three of the syllabus.
R.C. 2911.01(B) provides:
 (B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:
 (1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;
 (2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.
R.C. 2921.33(A) provides:
 (A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another.
To prove aggravated robbery, the prosecution had to demonstrate that appellant knowingly attempted to remove the deputy sheriff's weapon when the deputy sheriff was acting within the course and scope of his duties, and appellant knew or had reasonable cause to know that the deputy sheriff was a law enforcement officer. To prove that appellant committed the offense of resisting arrest, the prosecution would have been required to prove that appellant, recklessly or by force, resisted or interfered with a lawful arrest of himself or another. R.C. 2921.33(A).
This review of the elements of the offenses demonstrates that resisting arrest is not a lesser included offense of aggravated robbery. A person can commit aggravated robbery under R.C. 2911.01 without committing the offense of resisting arrest. Other courts have reached the same result. See State v. Silvestri (1999), Columbiana App. No. 98 CO 23; State v. Brantley (1987), Hamilton App. No. C-860574. Thus, the court did not err in refusing to give the instruction on resisting arrest, and appellant's seventh assignment of error is not well-taken.
For the foregoing reasons, appellant's first, second, third, fifth, sixth and seventh assignments of error are overruled, and his fourth assignment of error is sustained. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.
Judgment affirmed in part, reversed in part and cause remanded.
PETREE and KLATT, JJ., concur.