THE STATE OF OHIO, APPELLANT AND CROSS-APPELLEE,
*v.* THOMAS ET AL., APPELLEES AND CROSS-APPELLANTS;
RIEDER, CROSS-APPELLANT.

[Cite as State *v.* Thomas (1980), 61 Ohio St. 2d 223.]

(No. 79-207—Decided February 13, 1980.)

Mr. *Richard E. Bridwell,* prosecuting attorney, for the State of Ohio.

Mr. *William W. Lamkin,* for Oscar Thomas, Tory J. Gainer and Richard A Rieder.

Mr. *Thomas J. Livingston,* for Tory J. Gainer.

HOLMES, J.

## I.

Appellant, state of Ohio, argues that the Court of Appeals erred in reversing the convictions of defendants-appellees, Thomas and Gainer, for noncompliance with Crim. R. 23 (B), which, in part, provides that "[i]n misdemeanor cases juries shall consist of eight." Appellant urges this court to avoid a rigid and inflexible interpretation of Crim. R. 23 (B), and argues that the rule must be read in light of the liberal joinder provisions of Crim. R. 8 (B). In response, appellees assert that the language of Crim. R. 23 (B) is mandatory in character. They also contend that the Court of Ap-

peals correctly held that separate trials are required where an alleged misdemeanant is indicted jointly with an alleged felon.

While it is true in most instances that a trial court has a legal duty to comply with the literal language of Crim. R. 23 (B), *State, ex rel. Columbus,* v. *Boyland* (1979), 58 Ohio St. 2d 490, 493, we agree with appellant that a hypertechnical reading of the rule would defeat the purposes of the Rules of Criminal Procedure under the facts of this cause.

Crim. R. 1 (B) provides that:

"These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed and applied to secure the fair, impartial, speedy, and sure administration of justice, simplicity in procedure, and the elimination of unjustifiable expense and delay."

In an effort to effectuate these purposes, this court promulgated Crim. R. 8 (B), which governs joinder of defendants, and provides as follows:

"Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count."

Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries.

In this cause, the three defendants were alleged to have participated in the same illegal acts. There was no misjoinder of defendants; the prerequisites of Crim. R 8 (B) were met. Thereafter, in order to obtain a severance, it was incumbent upon appellees to demonstrate that the joinder was prejudicial within the meaning of Crim. R. 14. In pertinent part, Crim. R. 14 provides that:

"If it appears that a defendant * * * is prejudiced by a joinder * * * of defendants in an indictment * * * the court shall * * * grant a severance of defendants, or provide such other relief as justice requires."

We cannot agree with appellees that the fact that the trial would take place before a jury of twelve, rather than before a jury of eight, could present a sufficient appearance of prejudice to warrant a severance of defendants.

First, no constitutional right has been interfered with here. In that Thomas and Gainer had been charged with misdemeanors having a maximum penalty of six months in jail, the state of Ohio could have subjected these defendants to a trial without a jury and still not infringed upon their rights under the United States Constitution. *Cheff* v. *Schnackenberg* (1966), 384 U.S. 373; *Duncan* v. *Louisiana* (1968), 391 U.S. 145.

Ohio law does provide for a jury trial in misdemeanor cases where a jail penalty is provided. We hold that the meaning and intent of the language of this rule is that the misdemeanant will be afforded a jury of eight members, except in circumstances of joinder the jury may be composed of twelve members.

It is difficult to perceive any prejudice to the defendants by having a jury consisting of twelve rather than eight. Indeed it would seem that the state afforded Thomas and Gainer a greater right than they were entitled to under the Ohio Rules of Criminal Procedure. All research indicates that the larger the jury size the greater likelihood the defendant will escape conviction. This is particularly true in a jurisdiction such as Ohio where a unanimous verdict is required for a conviction. *Ballew* v. *Georgia* (1978), 435 U.S. 223, cited a number of studies which suggest that a larger jury inures to the benefit of the defendant in a criminal case.

We hold that Thomas and Gainer were properly joined with Rieder for trial, that such joinder was nonprejudicial, and that a jury of twelve was permissible under the circumstances. We therefore reverse that portion of the judgment of the Court of Appeals which reversed the convictions of defendants Thomas and Gainer.

## II.

Cross-appellants, Thomas, Gainer and Rieder, collectively present seven propositions of law as hereinafter set forth. We address them seriatim.

### A.

"Affidavit in support of search warrant, containing merely conclusory assertions and devoid of the underlying circumstances, observations or grounds for the conclusions, fails to establish probable cause. Mere conclusions that were alleged to be known 'by personal observation' are insufficient to establish probable cause absent any recitation of the details of the observation."

In examining the affidavit for a search warrant in the cause *sub judice**, we are guided by the interpretive rules

---

* The affidavit stated, in material part, as follows:

"The Undersigned, being duly sworn, states that he has reason to believe that there is now being concealed certain property, namely: Banker's Book, Cut Cards, Hit Slips, No Slips, Tapes or Ribbons used in gambling operations, together with large sums of United States Currency, which are evidence or fruits of crime on the person of Oscar Thomas, Richard Reider, known as Dick Reider, Tory Gainer, on the premises located at Ten Third Street, Roseville, Ohio, and in the automobiles described as a Pontiac Grand Prix, Registration 3937 SN, a tan Chevrolet Corvette, Registration W925R, and an Oldsmobile Cutlass, Registration V1896E, and that said item(s) of property are sought in relation to the commission of the following offense(s): Gambling, bookmaking, betting or in playing any scheme or game of chance.

"The facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: This affiant has received information from B.C.I. agents that through their own surveillance and information supplied by the Columbus Police Department Organized Crime Unit, along with information supplied by an F.B.I. Agent, Columbus, Ohio, has reason to believe that a gambling operation is being conducted on the property named in the Search Warrant due to the fact that the business name of the company in which the telephone is listed is a non-existing company, coupled with the fact that the three subjects operating this business are known gamblers and have been arrested for the same. Further, that the business is under the name of a fictitious oil and gas company of which none of the three suspects have had any association in this type of business. As late as August 27, 1977, by personal observation of B.C.I. Agents, participants were still engaged in this business.

"And the affiant has reasonable cause to believe that the source of information is credible and reliable in that: Affiant has reasonable cause to believe that the source of information is credible and reliable in that the information was gathered by B.C.I. Agents, their personal observations, along with information received through the Columbus, Ohio, Police Department Organized Crime Unit and an F.B.I. Agent working in the Columbus area.

that such affidavits are to be tested in a common sense manner, *United States* v. *Ventresca* (1965), 380 U.S. 102, 108, and include not only the facts averred, but also all reasonable inferences which may be drawn from those facts. *Id.* at 106. In light of these guidelines, we conclude that the affidavit herein was sufficient to impart probable cause to believe that bookmaking implements would be found on the premises described in the affidavit.

The affidavit established that agents of the Bureau of Criminal Investigation (B.C.I.) had conducted a surveillance of 10 Third Street in Roseville. This surveillance, along with information supplied by the Columbus Police Department and the Federal Bureau of Investigation, established that a telephone on the subject premises was listed in the name of a non-existent oil and gas company, that none of the three suspects had any association with the oil and gas business, that all the suspects purportedly operating this fictitious business were known gamblers and had previously been arrested on gambling charges, and that most of the "business" activity of the fictitious business took place during the daytime.

We believe the magistrate was entitled to infer that there was some kind of improper activity occurring at the Third Street address from the fact that the premises housed a fictitious business. Furthermore, listing a telephone under a fictitious name is a common *modus operandi* for a bookmaking operation. Finally, the suspicion of an illegal bookmaking operation aroused by the aforementioned facts ripened into probable cause with the addition of the fact that all three of the individuals engaged in the non-existent oil and gas business were known to law enforcement authorities as gamblers with prior arrests for gambling offenses. While the existence of one "partner" with a reputation for gambling might have been mere happenstance, the existence of three

---

"Affiant further says that there is urgent necessity that said search and seizure be made in the day time for the reason that: Personal surveillance has established that this is the time when the most activity occurs in the operating of this business.

/ s / *Donald A. Sonney*
Affiant"

such "partners" in a fictitious business justified more than a mere suspicion of illegal activity.

We also believe that the affiant's statements regarding the sources of his information are sufficiently complete in this case. He clearly stated that his information was gathered by the personal observations of B.C.I. agents and by information tendered by other law enforcement officers. We are not confronted with the problem of the credibility of an undisclosed informant that existed in *Aguilar* v. *Texas* (1964), 378 U.S. 108, and *Spinelli* v. *United States* (1969), 393 U.S. 410. Rather, this case presents a collation of information gathered from observations of officers from several agencies, and such information is "plainly a reliable basis for a warrant applied for by one of their number." *Ventresca, supra,* at 111.

In sum, we hold that the totality of the facts presented within the affidavit, and the surrounding circumstances, amply justify a finding of probable cause for issuing the search warrant here. Accordingly, we overrule defendants' first proposition of law.

## B.

Defendants attack the sufficiency of the second count of the indictment, in that it failed to specifically allege that their use or occupation of the instant premises was for gambling in violation of R.C. 2915.02.

The elements of the offense of operating a gambling house, as set forth in R.C. 2915.03 (A)(1) are: (1) owning, leasing, or having custody, control or supervision of premises; and (2) using or occupying such premises for gambling in violation of R.C. 2915.02. However, because the offense of "gambling" is described by R.C. 2915.02, the addition of the words "in violation of section 2915.02 of the Revised Code," is surplusage, and is unnecessary to charge an offense under R.C. 2915.03.

"An indictment need not be in the exact language of the statute defining the offense, so long as all the essential elements of the crime are contained in language equivalent to that used in the statute, and the accused is advised in the indictment of the nature and cause of the accusation he is expected to meet." *State* v. *Oliver* (1972), 32 Ohio St. 2d 109.

We hold that the indictment gave the defendants notice of all the elements of the offenses charged. Crim. R. 7(B). Accordingly, this proposition of law is overruled.

## C.

"Where defendants are not charged with engaging in organized crime under §2923.04, Ohio Revised Code, it is prejudicial error to permit prosecution witnesses to identify themselves as law enforcement officers assigned to investigate organized crime."

The references to organized crime in this case were made only to identify the occupation of the witness—police officer Chauncey Brothers. As such, they served a proper purpose, and were not exclusively designed to inflame the jury. Questions as to a witness' background and occupation are proper for purposes of assisting the jury to evaluate his credibility and connection with the case. This proposition of law is overruled.

## D.

"Where a law enforcement officer is permitted to testify and relate statements made over the phone to him on eight separate occasions by unknown third parties during the execution of a search warrant at the premises of a suspected bookmaker, Sixth Amendment right to confrontation and cross-examination is necessarily denied. Repeated unauthorized answering of a telephone during the execution of a search warrant constitutes an interception of a wire or oral communication requiring prior judicial approval under the Omnibus Crime Control and Safe Streets Act of 1968."

B.C.I. agent Donald A. Sonney testified at trial that during the execution of the search warrant at the Third Street address, he answered the telephone on eight occasions. On one such occasion, the caller began "naming various cities, Cleveland * * * plus six, and then another city, St. Louis, plus three * * *."

Assuming, *arguendo,* that the acts of agent Sonney were interceptions within the meaning of Section 2510(4), Title 18, U.S. Code, we believe they were exempt from the requirement of prior judicial approval, in that Sonney was a party to

the conversations. Section 2511 (2) (C), Title 18, U.S. Code, provides that:

"It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication * * * ."

We hold that a law enforcement officer may answer a telephone during the execution of a search warrant without obtaining prior judicial approval to do so. In so holding, we adopt, in part, the reasoning of *United States* v. *Campagnuolo* (C.A.5, 1979), 592 F. 2d 852. See, also, *Flaherty* v. *State* (1973), 255 Ark. 187, 500 S.W. 2d 87, certiorari denied, 415 U.S. 995; *State* v. *Vizzini* (1971), 115 N.J. Super. 97, 278 A. 2d 235.

Defendants argue further that the admission in evidence of the statements of anonymous telephone callers, made to agent Sonney during the execution of the search warrant, violated their right of confrontation and cross-examination under the Sixth Amendment. This contention is without merit.

## E.

"In a prosecution for illegal bookmaking, and where no conspiracy is charged, an act or declaration by one defendant, implicating a co-defendant, is not admissible on the grounds that such acts or declarations by one co-conspirator committed in furtherance of the conspiracy and during its pendancy are generally admissible against another co-conspirator."

In this proposition of law, defendants contend that an alleged accounting ledger, seized during the search of the Third Street premises, was improperly allowed in evidence. The ledger contained the notation "D—Cash, O—Cash, T—Cash," along with various numbers. An expert witness, utilizing defendants' handwriting exemplars, identified the notation as being in defendant Rieder's handwriting. Another expert witness testified that this type of ledger was commonly used in bookmaking operations, and that the notation referred to three individuals, listing the amounts they had collected over a given period of time.

Defendants Thomas and Gainer contend that the ledger was a hearsay statement as to them and that, because they had no opportunity to cross-examine defendant Rieder, its introduction violated their rights under the Confrontation Clause of the Sixth Amendment. We disagree.

Where a *prima facie* showing of conspiracy has been made, as in this case, an extrajudicial statement of a co-conspirator is admissible as an exception to the hearsay rule, and does not violate the right of confrontation. See *State* v. *Osborne* (1976), 49 Ohio St. 2d 135, 143; *State* v. *Carver* (1972), 30 Ohio St. 2d 280, 287, However, even if the introduction of the statement was error, it was harmless. The ledger constituted an insignificant portion of the state's case.

## F.

"Where prosecution witnesses testify over objection concerning hearsay conclusions from unnamed third parties that a 'sports bookmaking operation' was taking place, Sixth Amendment right to confrontation and cross-examination is denied and a reversal of the conviction is required."

Defendants contend that the testimony of law enforcement officials that they had received information about a "sports bookmaking" operation "taking place in Roseville, Ohio" was inadmissible hearsay, and violated their right of confrontation. This contention is devoid of merit.

The testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. See *United States* v. *Zamarripa* (C.A.8, 1976), 544 F. 2d 978, 982, certiorari denied, 429 U.S. 1111; *State* v. *Lopez* (1957), 182 Kan. 46, 51-2, 318 P. 2d 662, 666. The testimony was properly admitted for this purpose.

In their final proposition of law, defendants contend that there was insufficient evidence before the trial court to withstand their motions for judgment of acquittal. Under Crim. R. 29 (A), however, a court may not enter a judgment of acquittal if the evidence is such that reasonable minds can reach

different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261; *State* v. *Swiger* (1966), 5 Ohio St. 2d 151, paragraph two of the syllabus. We find that reasonable minds could have reached different conclusions as to the state of the evidence in this case, and hold that the case was properly submitted to the jury.

On the basis of the foregoing reasoning, we reverse that portion of the judgment of the Court of Appeals which reversed the convictions of defendants Thomas and Gainer, and affirm that portion which affirmed the conviction of defendant Rieder.

*Judgment reversed in part*
*and affirmed in part.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.