OPINION
{¶ 1} The appellant, Mary Dixon, appeals the November 19, 2002 judgment of conviction and sentencing of the Common Pleas Court of Logan County, Ohio.
 {¶ 2} Mary Dixon and her husband, Danny Dixon, Sr., were each indicted on May 14, 2002, for two counts of Permitting Drug Abuse in violation of R.C. 2925.13(B), both fifth degree felonies. These charges stemmed from two occurrences in November of 2001, wherein Mr. Dixon's son, Danny Dixon, Jr., sold marijuana from his father's home, which his father shared with Mary, to an informant for the Bellefontaine Police Department. On June 13, 2002, the State made a motion to consolidate Mary's case with that of her husband's. The trial court granted this motion without objection by Mary, and the cases proceeded to a two-day jury trial on September 26-27, 2002. Throughout the proceedings in this case, Mary and Danny Dixon, Sr., were represented by the same attorney. At the conclusion of the trial, both were found guilty on each count of their respective indictments and sentenced accordingly. This appeal followed, and Mary now asserts five assignments of error.
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION FOR ACQUITTAL AT THE CONCLUSION OF ALL THE EVIDENCE.
 THE TRIAL COURT ERRED IN GRANTING THE STATE'S MOTION TO CONSOLIDATE THE CASE FOR TRIAL WITH THAT OF CO-DEFENDANT DANIEL DIXON.
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL ENTITLING HER TO A NEW TRIAL.
 THE TRIAL COURT ERRED AND COMMITTED PLAIN ERROR IN ALLOWING THE PROSECUTING ATTORNEY TO MAKE IMPROPER CLOSING ARGUMENT.
 THE TRIAL COURT ERRED IN ALLOWING IMPEACHMENT EVIDENCE WHOSE PROBATIVE VALUE WAS OUTWEIGHED BY ITS PREJUDICIAL EFFECT.
 First Assignment of Error {¶ 3} Mary first asserts that the trial court erred in not granting her motion for acquittal. Rule 29(A) of the Rules of Criminal Procedure states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction of such offense[.]" Accordingly, "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus; see, also, State v. Boddie, Allen App. No. 1-2000-72, 2001-Ohio-2261, 2001 WL 1023107. However, as this court has previously held, the Bridgeman standard "must be viewed in light of the sufficiency of evidence test[.]" State v. Foster (Sept. 17, 1997), Seneca App. No. 13-97-09, 1997 WL 576353 (citing State v. Jenks [1991],61 Ohio St.3d 259, paragraph two of the syllabus). In Jenks, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra.
 {¶ 4} As previously noted, Mary was convicted of two counts of Permitting Drug Abuse, a violation of R.C. 2925.13(B). This section states: "No person who is the owner, lessee, or occupant, or who has custody, control, or supervision, of premises * * * shall knowingly permit the premises * * * to be used for the commission of a felony drug abuse offense by another person." Neither party disputes that Mary was an occupant of the home where the drugs were sold on the two occasions from which the counts against Mary arose. In addition, neither party disputes that a felony drug abuse offense occurred on these two separate occasions. However, Mary contends that the State failed to present sufficient evidence that she "knowingly permitted" her stepson to sell drugs from the home she shared with her husband.
 {¶ 5} In support of her argument, Mary maintains that she had no control over her adult stepson's actions because she was not on the lease agreement and he was. Thus, she contends that she did not permit the commission of a felony drug abuse offense by her stepson. Mary relies on authority from the Hamilton County Municipal Court in support of her assertion that she was not in a position to permit her stepson to use the premises they shared to conduct drug transactions. See State v. Wylie
(1987), 36 Ohio Misc.2d 20. In Wylie, the trial court held that the defendant-wife did not have control of the premises as to the actions of her husband, who was in possession of cocaine and with whom she shared an apartment where the cocaine was located. Id. at 21-22. We do not findWylie to be dispositive in the case sub judice.
 {¶ 6} Here, the lease reflects that it was entered into on September 1, 1997, by Ethel Hassel, the owner of the property, Danny Dixon, Sr., and Kim Brugler, a former girlfriend of Danny Dixon, Sr. Although Mr. Dixon and Ms. Brugler were identified as the tenants, the lease also included the names of Mr. Dixon's sons, James and Danny, Jr. However, Mary began living in the home sometime in 1998, along with her minor children, and she and Danny, Sr., were married in 2000. Once they were married, Mary became the wife of the home. Although she may not have had the ability to physically confront her stepson, the record is devoid of any evidence that she ever attempted to prevent him, either verbally or physically, from committing a felony drug offense in the home, which she admittedly occupied at the relevant times herein.
 {¶ 7} Unlike the facts of Wylie, the offender who was permitted to use the premises in the present case, Danny, Jr., was not the defendant's husband but rather was her stepson. In addition, the trial court inWylie relied upon the fact that the wife did not have control over the premises that she equally shared with her husband. Id. However, in this case there was testimony that Danny, Jr., only rented one bedroom in the home from his father and Mary rather than having equal or superior occupancy of the entire house. Moreover, the State presented evidence that Danny, Jr., went upstairs to the bedroom, which Mary and her husband shared, to weigh and/or separate the requested amount of marijuana for the police informant. Furthermore, the informant also testified that on both occasions, the drug sale happened in plain view with Danny, Sr., and Mary located only a few feet away and that Mary looked at her stepson and the informant while the sales were occurring. Thus, the State presented sufficient evidence for the jury to determine whether Mary knowingly permitted the drug offenses to occur, and the first assignment of error is overruled.
 Second Assignment of Error {¶ 8} In her second assignment of error, Dixon maintains that the trial court erred in consolidating her case with that of her husband, Danny Dixon, Sr. However, Mary never objected to the consolidation of these two cases, which requires that it be reviewed under a plain error standard. In order to have plain error under Crim.R. 52(B), there must be a deviation from a legal rule, the error must be an "obvious" defect in the trial proceedings, and the error must have affected a defendant's "substantial rights." State v. Barnes, 94 Ohio St.3d 21, 27,2002-Ohio-68. Plain error is to be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.
 {¶ 9} Criminal Rule 13 permits the trial court to consolidate the trial of defendants who have been or could have been joined in a single indictment. The State is permitted to join multiple defendants in a single indictment if they have participated in the same act or transaction or in the same course of criminal conduct. Crim.R. 8(B). The Ohio Supreme Court has determined that joinder is favored in the law because it "conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." State v. Thomas (1980),61 Ohio St.2d 223, 225.
 {¶ 10} Mary and her husband could have been joined in a single indictment in accordance with Crim.R. 8(B) and 13. However, while joinder of defendants is generally favored because it is efficient, joinder may not be permissible if it will cause substantial prejudice to the right of a defendant's fair trial. Bruton v. United States (1968), 391 U.S. 123,131-132. Crim.R. 14 provides, in pertinent part, that:
 If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires.
 Thus, in order to obtain severance a defendant must "demonstrate that the joinder was prejudicial within the meaning of Crim.R. 14." Thomas, 61 Ohio St.2d at 225.
 {¶ 11} Mary maintains that she suffered great prejudice by being represented by the same attorney, which created a conflict of interest. In addition, Mary asserts that the consolidation caused her to be "tarred with the same brush" as that of her husband, whose defense was much weaker than her own. We agree.
 {¶ 12} Prior to trial, the State made a motion in limine requesting that it be allowed to present evidence related to a search of the Dixon home on May 4, 2000, as evidence of knowledge in its case-in-chief or for impeachment purposes. This evidence was obtained through the execution of a search warrant. During the search, the police recovered nearly a pound of marijuana, rolling papers, hand-held scales, a list of names, which the police suspected were drug customers, and numerous sandwich bags from the upstairs bedroom, which Danny, Sr., shared with Mary. As a result of this search, Danny, Sr., was indicted and eventually convicted for the offense of possession of drugs. However, this Court reversed that conviction on March 28, 2001, having determined that the police did not properly knock and announce their presence before entering the home. See State v. Dixon (2001),141 Ohio App.3d 654. Thus, the trial court refused to allow this evidence to be introduced during the State's case-in-chief but ruled that such evidence would be permissible for impeachment purposes if either defendant chose to testify.
 {¶ 13} During the trial, Danny, Sr., elected to testify despite his attorney's advice to the contrary. As a part of his trial strategy for Danny, Sr.'s case, counsel for the Dixons began his examination of Danny, Sr., by having him acknowledge that he used marijuana for twenty-eight years and was addicted, that he was convicted of possession of drugs, that the conviction was overturned on appeal, and that he had gone to counseling for his addiction after he was charged with possession and had been drug free since January, 2001. Danny, Sr., further testified that he did not smoke marijuana in front of his children and that he did not allow his children to sell drugs from his home. The State then cross-examined him about the May 4, 2000 search of his home and the items that were recovered during the search. In addition, the State asked him whether he had ever sold drugs, to which he replied in the negative. However, the prosecutor followed that question with the following: "Well, can you explain why your wife would have told the authorities you did?" Danny then responded, "Only thing I can figure is they had her scared to death." This line of questioning continued for a few more questions and ended with the following question from the prosecutor: "So you're telling us your wife's the liar, that you don't sell drugs?" Although Danny responded that his wife had no idea and did not know he even smoked marijuana, Mary's knowledge and acquiescence to the sale of drugs in her home was still implied.
 {¶ 14} Had these two cases not have been tried together, the jury in Mary's case would not have been privy to Danny, Sr.'s testimony. Without the testimony of Danny, Sr., the prosecution would have been precluded from introducing the evidence obtained from the May 4, 2000 search, including Mary's subsequent statement implicating her husband and exhibiting her knowledge, as the trial court had previously ruled that this evidence was only permissible for impeachment purposes. Mary never testified; thus, she was not subject to impeachment.
 {¶ 15} The evidence against Mary, basically, would have consisted of the statements and testimony of the police informant, who was a convicted felon cooperating with the police in order to place himself in a better light, that she had looked at him as he inspected the bag of marijuana he purchased from her stepson. Instead of this limited evidence, the consolidated trial led to the jury learning of the extensive use of marijuana by Danny, Sr. in the marital home and, in fact, within the couple's own bedroom. In addition, Mary's knowledge of this was gleaned from evidence that the trial court permitted solely if one of the defendants chose to testify. The importance of this statement was exhibited in the jury's request during deliberations that they see the written statement Mary provided to police about her husband's use and sale of drugs.
 {¶ 16} Further, the jury also received testimony that as the informant was leaving the home during the second transaction, he was stopped by Danny, Jr., who then stated that his father asked him, "Where's the fifty," because the informant forgot to pay for the marijuana. This statement exhibited Danny, Sr.'s knowledge that his son was selling drugs and further implied that he was permitting his son to do so in his home. However, this statement was not probative of Mary's involvement, and as such, would not have been admissible during her trial. Thus, this consolidation, and the evidence admissible as to Danny, Sr., substantially prejudiced Mary's ability to defend herself as her involvement was implied through the evidence used to cross-examine her husband. In other words, this evidence allowed the jury to infer that both defendants, who were husband and wife and shared a home, knew about the sales, permitted them to be conducted in their home, and even assisted these sales. Therefore, the trial court erred in consolidating these cases. In addition, the potential for prejudice against Mary should have been foreseen in the event her husband chose to testify. Further, this defect substantially affected her right to a fair trial, i.e. to be convicted solely on the evidence against her, rather than her husband. Therefore, we find plain error occurred as to Mary in the consolidation of these two cases, and the second assignment of error is sustained. Additionally, the remaining assignments of error are rendered moot based upon this determination.
 {¶ 17} For these reasons, the judgment of the Common Pleas Court of Logan County, Ohio, is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
WALTERS and CUPP, JJ., concur.