[Cite as *State v. Brown*, 2011-Ohio-2285.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 95481

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## STANLEY BROWN

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART
## AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-535872

**BEFORE:** Jones, J., Stewart, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:** May 12, 2011

ATTORNEYS FOR APPELLANT

Robert L. Tobik
Cuyahoga County Public Defender

BY: David M. King
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY: James M. Rice
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113


LARRY A. JONES, J.:

{¶ 1}  Defendant-appellant, Stanley Brown ("Brown"), appeals his burglary and theft convictions.   We affirm in part and reverse and remand in part.

I.   Procedural History and Facts

{¶ 2}  Brown was indicted in April 2010 on two counts of burglary and one count of theft.   The burglary charges contained notices of prior conviction and repeat violent offender

specifications.   After Brown waived his right to a jury trial, the case proceeded to a bench trial.

**{¶ 3}**   The state presented two witnesses: Hieu Lieu ("Lieu"), the victim, and Officer Sanchez,[1] the arresting officer.   Their testimonies established the following.   Lieu was the owner of a nail and beauty supply store on Superior Avenue in Cleveland.   The downstairs portion of the building was the business and the upstairs portion of the building was Lieu's apartment.   Ten surveillance cameras were positioned in or about the building.

**{¶ 4}**   Lieu's office and the inventory were in the back portion of the business. Sometimes deliveries were made to, and customer pick-ups were done at, the back of the building, but generally the entrance and exit for customers was the front door.   Lieu testified that while he is working he generally keeps the back door unlocked, but locks it when he is finished working for the day.   On the day of the incident, Lieu had been in the back portion of the business, but left momentarily to go upstairs to his apartment.

**{¶ 5}**   When Lieu returned to the office, his sister-in-law told him that a man, later identified as Brown, came into the back of the business, stole a drill, and left.   Lieu looked at one of the video surveillance tapes and saw what his sister-in-law had described.   Another tape showed the direction Brown had traveled when he left, so Lieu pursued, and caught up to him.   Lieu confronted Brown and demanded his drill back, but Brown denied having it.   A bystander called the police; Officer Sanchez arrived a minute or two later.

---

[1]The record does not indicate the officer's first name.

**{¶ 6}** After Lieu told Officer Sanchez what had happened, Officer Sanchez asked Brown to unzip his coat. The drill was recovered from within Brown's coat. The officer then transported Brown back to Lieu's business and viewed the surveillance tape showing a man entering the back of the business, taking the drill, and leaving. Sanchez testified that Brown was the man shown on the tape, so he arrested him.

**{¶ 7}** After being advised of his *Miranda* rights, Brown told the officer that he only went into the business to get an application and the drill was his because he found it in a dumpster in the back of the business. Sanchez testified that the recovered drill matched a set of tools in Lieu's office.

**{¶ 8}** It was upon this evidence that Brown was convicted as charged. After convicting him, the trial court immediately proceeded to sentence Brown to a four-year prison term, which consisted of four years on each of the burglary counts, and 60 days on the theft count, all to be served concurrently.

**{¶ 9}** Brown raises the following assignments of error for our review:

"[I.] Defendant Stanley Brown was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

"[II.] The trial court erred by not sua sponte raising the issue of the defendant's competence to stand trial.

"[III.] The trial court erred by allowing the admission of hearsay testimony from Ofc. Sanchez."

"II.  Law and Analysis

{¶ 10} In his assignments of error, Brown contends that his counsel was ineffective because he (1) did not object to Officer Sanchez's hearsay testimony; (2) elicited further hearsay testimony from the officer on cross-examination; and (3) did not challenge Brown's competence to stand trial. Brown further contends that the trial court erred by not raising Brown's competency on its own and by allowing Sanchez's hearsay testimony.

{¶ 11} In order to prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; see, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. Initially, the defendant must show that counsel's performance was deficient. To meet that requirement, the defendant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. The defendant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Strickland* at 690.

{¶ 12} Next, if the defendant successfully proves that counsel's assistance was ineffective, the second prong of the *Strickland* test requires the defendant to prove prejudice in order to prevail. Id. at 692. To meet that prong, the defendant must show that counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at

687. A defendant meets this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

{¶ 13} Brown contends that the following was improper hearsay testimony: (1) Officer Sanchez's testimony on direct examination that, "[n]ext, I conferred with the victim, he said * * * [Brown] went to my store through the back door, went into my office, stole a drill, I have a videotape and he had been recorded, I believe he has got that drill with him"; and (2) Officer Sanchez's testimony on cross-examination that, "I learned from the victim that the * * * business is downstairs and the upstairs is for them to live in." We disagree with Brown's contention.

{¶ 14} In *State v. Thomas* (1980), 61 Ohio St.2d 223, 400 N.E.2d 401, the Ohio Supreme Court addressed the issue of a police officer testifying about what he learned during his investigation and held as follows:

> "The testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to the actions of a witness to whom the statement was directed. * * * The testimony was properly admitted for this purpose." Id. at 232.

{¶ 15} Here, Officer Sanchez testified as set forth above in response to the state's question about what he did upon arriving at the initial scene and the defense's question about what he did upon arriving at Lieu's place of business. The testimony was not offered to prove

the truth of the matter asserted, that is, it was not hearsay. Rather, it was offered to explain how the officer investigated the case.

{¶ 16} Further, Lieu testified, offering the same testimony contained in the challenged testimony, and was subject to cross-examination. Thus, Brown's right to confrontation, which is what the general prohibition on hearsay concerns, was not violated.

{¶ 17} Accordingly, defense counsel was not ineffective by failing to object to the testimony or by its questioning on cross-examination, and the trial court did not err by allowing the testimony. The first and third assignments of error are therefore overruled.

{¶ 18} Brown further contends that his counsel was ineffective, and the trial court erred, by not raising the issue of his competency. We disagree.

{¶ 19} A defendant is legally incompetent if "incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense[.]" R.C. 2945.37(G); *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 164, 749 N.E.2d 226, certiorari denied (2002), 534 U.S. 1144, 122 S.Ct. 1100, 151 L.Ed.2d 997. A defendant is presumed to be competent to stand trial unless proof by a preponderance of the evidence is presented as to the defendant's incompetency. *State v. Berry* (1995), 72 Ohio St.3d 354, 360, 650 N.E.2d 433.

{¶ 20} Moreover, a defendant has the right to a hearing on the issue of competency "where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial." Id. at 359, 650 N.E.2d 433, quoting *Drope v. Missouri* (1975), 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d

However, counsel need not raise meritless issues or even all arguably meritorious issues. *State v. Taylor* (1997), 78 Ohio St.3d 15, 31, 676 N.E.2d 82, certiorari denied (1997), 522 U.S. 851, 118 S.Ct. 143, 139 L.Ed.2d 90.

{¶ 21} Brown contends that his competence should have been an issue before the trial court based on (1) his interaction with the court prior to trial; (2) his counsel's awareness of his mental health issues; and (3) his prior mental health history.

{¶ 22} Upon review of Brown's interaction with the court prior to trial, we do not find "sufficient indicia of incompetence." The specific interaction cited by Brown occurred when the court asked him if it was correct that he did not want his attorney to pursue a plea agreement with the state. Brown responded that he was "not guilty of burglary. I don't do burglaries." After informing Brown of the minimum mandatory term under the state's proposed offer, Brown said that he had been "in court for burglary once before, and they found me not guilty by appeal. * * * [The judge] made a mistake in my sentencing. * * * Presently I got an appeal for this case right now. I don't do burglaries."

{¶ 23} The trial court informed Brown that he could not have an appeal unless he was convicted, to which he responded, "I know that." The court asked Brown what he meant about having an appeal, and he responded, "I needed some help for my personal self-being. I don't do burglaries. That's what I'm saying. * * * I haven't broken into anything. * * * My plea would be not guilty, because I am not guilty of burglaries. I don't do burglaries."[2]

_____

[2]Further, Brown sent a letter to the prosecutor's office prior to trial in which he insinuated that

{¶ 24} On this record, an inquiry into Brown's competency, occasioned by the court or counsel, was not necessary. Brown understood the nature and objective of the proceedings against him, and was capable of assisting in his defense. In fact, he twice interjected during trial, once to challenge Lieu's identification of him based on his hair color, and the second time to note to the court that the surveillance tape did not show him with the drill in his hand.

{¶ 25} We likewise do not find that counsel was ineffective by not seeking an inquiry into Brown's competency based on counsel's awareness of Brown's mental health issues. In his closing statement to the court, defense counsel acknowledged that Brown "has severe mental illnesses." But counsel noted that Brown's mental health issues did not "cloud his ability to think clearly or make rational decisions," but they did "cloud his ability to make decisions with respect to what would be in his best interest." At sentencing, counsel further stated that Brown was a "severe schizophrenic," who has refused treatment.

{¶ 26} Our review of the record, as detailed above, indicates, as stated by defense counsel, that Brown was able to think clearly, but may not have always made decisions that were in his best interest. Thus, counsel was not ineffective for not requesting a competency evaluation.

---

he would not take a plea deal because stealing a drill is "petty" theft for which he would be sentenced to either time served or probation.

{¶ 27} In regard to prior evaluations of Brown done in other cases, the relevant issue is whether Brown was competent to stand trial in *this* case. In particular, R.C. 2945.37 provides that:

"A defendant is presumed competent to stand trial, unless it is proved by a preponderance of the evidence in a hearing under this section that because of his *present* mental condition he is incapable of understanding the nature and objective of the proceedings against him or of *presently* assisting in his defense." (Emphasis added.)

{¶ 28} As discussed above, we find that Brown was capable of understanding the nature and objective of the proceedings in this case and capable of assisting in his defense. As the Ohio Supreme Court has held, "[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock* (1986), 28 Ohio St.3d 108, 110, 502 N.E.2d 1016.

{¶ 29} In light of the above, the second assignment of error is overruled.

{¶ 30} Finally, we sua sponte raise the issue of the conviction on both counts of burglary. There was only one burglary in this case. Brown was indicted on two counts of burglary that specified alternate means of committing the crime. Count 1 charged that he committed the burglary with a person present in the building, while Count 2 did not contain the element of someone being present during the burglary. Because both counts involved alternate theories for the single offense of burglary, the trial court should have merged the two counts into a single conviction and sentence. See *State v. Huertas* (1990), 51 Ohio St.3d 22,

28, 533 N.E.2d 1058.   Accordingly, we remand the case with instructions to issue a new judgment entry of conviction and sentence.

Affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES,   JUDGE

MELODY J. STEWART, P.J., and
JAMES J. SWEENEY, J., CONCUR