[Cite as *State v. Klein*, 2013-Ohio-228.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES: |
| | Hon. Sheila G. Farmer, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J. |
| | Hon. Julie A. Edwards, J. |
| -vs- | |
| | Case No. CT2012-0016 |
| RICHARD H. KLEIN, JR. | |
| | |
| Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal Appeal from the Court of Common Pleas, Case No. CR2011-0207 |
| JUDGMENT: | Reversed and Remanded |
| DATE OF JUDGMENT ENTRY: | January 25, 2013 |


APPEARANCES:

| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| ROBERT L. SMITH | DAVID J. GRAEFF |
| ASSISTANT PROSECUTOR | Post Office Box 1948 |
| 27 North Fifth Street, Suite 201 | Westerville, Ohio 43086-1948 |
| Post Office Box 189 | |
| Zanesville, Ohio 43702-0189 | |

*Wise, J.*

{¶1} Appellant Richard H. Klein, Jr. appeals from his convictions, in the Court of Common Pleas, Muskingum County, for child endangering and involuntary manslaughter. The relevant facts leading to this appeal are as follows.

{¶2} On the evening of June 3, 2011, Appellant Richard Klein and his wife, co-defendant Kasey Klein, commenced a tent camping trip at Ellis Dam, Lock 11. They brought Kasey's sons, A.C. (age three) and A.J. (age two), with them on the trip.

{¶3} The next morning, emergency management officials were alerted that the boys were missing. Rescue personnel eventually found A.C.'s body in the Muskingum River. The coroner subsequently determined that A.C.'s death was caused by accidental drowning. A.J. has never been found.

{¶4} On September 7, 2011, appellant and Kasey were each indicted by the Muskingum County Grand Jury on two counts of child endangering, felonies of the third degree under R.C. 2919.22(A), and two counts of involuntary manslaughter under R.C. 2903.04(A), felonies of the first degree.

{¶5} Appellant thereafter appeared in court and entered pleas of not guilty. The case proceeded to a jury trial commencing January 30, 2012.

{¶6} At the trial, the State presented evidence that appellant and Kasey set up their tent in an authorized camping area about twenty-five feet from the river's edge. There were no restrictions against children or pets in the campground. A.C. and A.J. were known to be rambunctious, and a latch lock had been put on outside of their bedroom at home. According to Kasey's trial testimony, the boys were permitted to stay up until about 9:00 PM on the evening of June 3, 2012. Kasey tucked them in their

blankets or sleeping bags and came back to the tent about an hour later, while appellant fished a while longer.  See Tr. at 456-457.

{¶7}    The next morning, appellant woke Kasey up and told her the boys were missing. Law enforcement and rescue officials were called to the scene. Appellant told investigators that he awoke briefly at about first light on June 4, 2012, at which time A.J. was fussing. He claimed he rubbed A.J.'s back to calm him down, and then went back to sleep, but when he woke up a little later, both boys were gone. Kasey told law enforcement officers that she had taken a prescription Xanax pill on Friday afternoon, which tended to make her tired. No other evidence of alcohol or other drugs was produced.  However, appellant purportedly had worked from 5:50 AM to 4:30 PM on Friday.

{¶8}    As part of the search effort, rescue teams brought in two specially-trained tracking dogs, who followed the boys' scent to a lockwall about five-hundred feet from the tent site. Searchers ultimately found A.C.'s body floating in the river about one mile south of the dam. He was wearing a sleeper and had both shoes on. A.J.'s body was never found, although at least one of his shoes was discovered. Evidence was adduced that A.C., age three, had cerebral palsy and tired easily after walking about two-hundred feet, and that he also had balance issues. Also, A.C.'s early childhood teacher, Lisa Shannon, testified that A.C. needed assistance putting on his shoes due to his weaknesses on his right side and his difficulty with balance.

{¶9}    The jury found appellant guilty as charged on all counts. Kasey was also found guilty as charged on all counts

{¶10} On February 21, 2012, following a sentencing hearing, appellant was sentenced to a total prison term of twelve years, plus restitution.

{¶11} On March 6, 2012, appellant filed a notice of appeal. He herein raises the following five Assignments of Error:

{¶12} "I. WHEN THE ATTORNEY FOR THE CO-DEFENDANT REPRESENTS, AND PRESENTS 'EVIDENCE' TO THE JURY THAT THE DEFENDANT COMMITTED PURPOSEFUL MURDER, WHEN THERE IS NO SUCH BASIS, LEGAL OR FACTUAL, TO SUPPORT SUCH, THE RESULT IS A DEPRIVATION OF DUE PROCESS, CONTRA THE FAIR TRIAL RIGHTS OF THE DEFENDANT UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO CONSTITUTION.

{¶13} "II. WHERE THE VERDICT FORMS VIOLATE R.C. 2945.75, SAID VERDICTS CONSTITUTE A FINDING OF THE LEAST DEGREE OF THE OFFENSE AND THE SENTENCE NEEDS TO BE REDUCED.

{¶14} "III. THE TRIAL COURT ERRED WHEN IT DENIED THE MOTION TO SEVER, CONTRA THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.

{¶15} "IV. THE TRIAL COURT ERRED WHEN IT ORDERED THE DEFENDANT TO PAY RESTITUTION TO THE CO-DEFENDANT'S FATHER.

{¶16} "V. THE TRIAL COURT ERRED WHEN IT DENIED A REQUEST TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF RECKLESS HOMICIDE."

I., III.

{¶17} We will address appellant's First and Third Assignments of Error together. In his First Assignment of Error, appellant contends he was deprived of due process and a fair trial based on the strategy and actions of his co-defendant's trial counsel. In his Third Assignment of Error, appellant contends the trial court erred in denying the motion to sever the trial as between appellant and his co-defendant. We agree.

{¶18} The essence of a defendant's right to due process in a criminal case is the right to a fair opportunity to defend against the state's accusations." *See State v. Swann,* 119 Ohio St. 3d 552, 2008-Ohio-4837, ¶ 12, citing *Chambers v. Mississippi* (1973), 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297, 312-313.

{¶19} Crim.R. 14 reads as follows: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires. * * *"

{¶20} In analyzing issues of severance, the general rule is that the defendant bears the burden under Crim.R. 14 to prove prejudice and that the trial court abused its discretion in denying severance. *See State v. Coley* (2001), 93 Ohio St.3d 253, 259, 2001-Ohio-1340, citing *State v. Torres,* 66 Ohio St.2d 340, 421 N.E.2d 1288, syllabus. In *State v. Thomas* (1980), 61 Ohio St.2d 223, 225, 400 N.E.2d 401, the Ohio Supreme Court noted: "Joinder of defendants and the avoidance of multiple trials is favored in the law for many reasons. Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to

witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." Hence, "[j]oinder of defendants is the rule rather than the exception and the burden is on the defendant to establish any resulting prejudice." *State v. Fannin,* Cuyahoga App. No. 80014, 2002-Ohio-4180 (citations omitted). Furthermore, mutually antagonistic defenses are not prejudicial per se. *State v. Jacocks*, Stark App.No. 2002CA00359, 2003-Ohio-6839, ¶ 92; *Zafiro v. United States* (1993), 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (internal quotations omitted).

**{¶21}** Appellant emphasizes that he is not suggesting prosecutorial misconduct in this case. See Appellant's Brief at 13. However, appellant points out that during Kasey's defense testimony, she was asked about her review of some of the discovery materials in the case:

**{¶22}** "Q: And at that time did you read a summary of [Appellant] Richard's statement to the detectives on June 4th?

**{¶23}** "A: Yes.

**{¶24}** "Q: Okay. Did anything in there concern you?

**{¶25}** "A: Yes.

**{¶26}** "Q: And - - what concerned you?

**{¶27}** "A: His statement about [A.J.'s] shoes.

**{¶28}** "Q: Okay. Did --- the jury has heard the tape yesterday, but can you tell us what Richard said about [A.J.'s] shoes that bothered you?

**{¶29}** "A: He said that [A.J.] had his shoes on and he must have kicked one off. But [A.J.] didn't have his shoes on. He took them off before he went to bed.

{¶30} "Q: Okay. Was there anything else in Richard's statements to detectives that concerned you?

{¶31} "A: He said that he didn't know if [A.C.] had his shoes on or not. And then when they told him that he was found with his shoes he said then he must have had them on - - or that he didn't know. But I took them off of him.

{¶32} "Q: Okay. Kasey, after you saw that did you make a decision with regard to Richard?

{¶33} "A: Yes."

{¶34} Tr. at 470-471.

{¶35} At that point, appellant's trial counsel entered an objection, which was overruled. The questioning of Kasey then continued as follows:

{¶36} "Q: When you got that discovery, Kasey, did --- did you make a decision with respect to your husband?

{¶37} "A: Yes.

{¶38} "Q: And what was that, Kasey?

{¶39} "A: I stopped having contact with him. I quit writing.

{¶40} "Q: Okay. And you've not written him since?

{¶41} "A: No."

{¶42} Tr. at 472.

{¶43} During the subsequent cross-examination of Kasey, the prosecutor asked her about the boys' shoes and the tent door at the time the boys were put to bed. Kasey answered in the affirmative that she "believe[d] [she] took the shoes back off."

Tr. at 497. She also stated that she had "zipped up" the tent door. Tr. at 498. The following exchange also occurred:

{¶44} "[Prosecutor] Q: So you feel Richard lied about this issue about the shoes, for what that's worth?

{¶45} "A: Yes."

{¶46} Tr. at 501.

{¶47} After all the witnesses had testified at trial, Kasey's trial counsel requested jury instructions, for Kasey's defense, on the issue of an independent intervening act of causation, arguing outside the presence of the jury that "even if [Kasey] were reckless, which we do not concede, we think there's [a] very good argument against that, but [Appellant] Mr. Klein is the only other person in that tent who could have gotten the boys out of that tent at 500 feet – almost 500 feet down the river." Tr. at 531. However, the trial court denied an instruction on "intervening act." See Tr. at 540. Kasey's trial counsel also stated, again outside of the presence of the jury: "Now, if Mr. Klein murdered these boys in the middle of the night when my client slept, and there's a clear inference for that, then that means she could not have reason to foresee that. This is not *** a situation of mutually antagonistic defenses." Tr. at 546.

{¶48} Kasey's trial counsel's closing arguments to the jury included the following commentary:

{¶49} "Does anybody believe, ladies and gentlemen, that this three-year-old boy in a dark tent at night would have been able to do this (indicating)? Open this up. Well, look what happened here when you open that up. Look at that. This velcro strap comes out. Does anybody really believe that this boy would have been able to take

that shoe (indicating) and put his foot with this sleeper on into that shoe like that, himself in the dark in that tent, standing up to put it on his right foot?  Does anybody believe he could have done that without falling down?  These shoes tell the story of this case.

{¶50} "Now, Kasey was rather matter of fact about a very simple fact in this case, ladies and gentlemen, when she was interviewed by Mike Ryan; when I put the boys to bed I took their shoes off.  No question about that, because that's what happened and that's what anybody would do.  What kid sleeps in his shoes.  [A.C.] certainly didn't, because Lisa [Shannon] said he kicked them off.  And Lisa spent a lot of time with him every day, all day.

{¶51} "* * *

{¶52} "I believe that when asked about how the boys were dressed when they went to bed, Mr. Klein said he had  - -  said they had on their sleepers, and then he made a point of offering that [A.J.] had his shoes on earlier  - -  or he had his shoes on but must have kicked one on  - -  or must have kicked one off in the middle of the night.  That's interesting.  Why would he offer that?

{¶53} "Well, you remember the testimony was that he was there when they were doing the  - -  not the inventory, but the  - -  they were looking for an item to get a scent from the boys and Mike said that they found one shoe in the tent.  Obviously, it wasn't [A.C.'s] shoe or one of his shoes, because his shoes were found on his body in the river.  So the inference is that it would have been one of [A.J.'s] shoes.  Now, that wasn't collected.  It wasn't inventoried, cataloged, itemized, or otherwise described, but it was obviously a child's shoe.

**{¶54}** "Here's what happened. Mr. Klein realized that and he realized that it had to be explained. That's why he offered that explanation on his own without prompting in that interview. This is what we call in the law consciousness of guilt. Shakespere's [sic] old saying. He protested too much."

**{¶55}** Tr. at 571-573.

**{¶56}** In its response brief, the State reiterates that both appellant and Kasey were tried for involuntary manslaughter, not murder. The State also notes that the prosecutor reminded the court and/or the jury at least twice during the trial that he did not believe either defendant committed murder. See Tr. at 546, 615. In essence, the State maintains that reasonable jurors would not have given credence to Kasey's theory of the case.

**{¶57}** Taken in its entirety, we presently find the joint trial of appellant and Kasey, under the circumstances that developed as the case progressed, prejudiced appellant's defense with the insinuation that he murdered the two victims to such extent that a new trial is warranted with the co-defendants severed. In reviewing this matter, we recognize that the trial court was required to make its decision regarding severance of defendants at the beginning of the trial. We note Kasey's trial counsel, at the pre-trial motion hearing, somewhat vaguely told the trial court that it "may or may not be the case" that "both defendants are in the same boat." Tr. January 17, 2012, at 9. However, Kasey's trial counsel assured the court at that time that he saw "no reason to separate" the trials. *Id.* at 10. It was in this context that the trial judge chose to conduct a joint trial.

**{¶58}** Appellant's First and Third Assignments of Error are therefore sustained.

II., IV., V.

**{¶59}** Based upon our above conclusions, we find the issues raised in the Second, Fourth, and Fifth Assignments of Error are moot.

**{¶60}** For the reasons stated in the foregoing, the decision of the Court of Common Pleas, Muskingum County, Ohio, is hereby reversed and remanded for further proceedings.

By: Wise, J.

Farmer, P. J., and

Edwards, J., concur.

_____

_____

_____

JUDGES

JWW/d 1221

IN THE COURT OF APPEALS FOR MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                              :
                                           :
    Plaintiff-Appellee                 :
                                           :
-vs-                                       :              JUDGMENT ENTRY
                                           :
RICHARD H. KLEIN, JR.                      :
                                           :
    Defendant-Appellant                :              Case No. CT2012-0016


      For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Muskingum County, Ohio, is reversed and remanded for further proceedings consistent with this opinion.

      Costs assessed to appellee.


                             _____


                             _____


                             _____

                                          JUDGES