JOURNAL ENTRY AND OPINION.
{¶ 1} Defendant Andrew Byrd appeals from his convictions for two counts of gross sexual imposition. For the reasons set forth below, we affirm in part, reverse in part, and remand for re-sentencing.
 {¶ 2} On May 16, 2002, defendant was indicted for one count of gross sexual imposition allegedly committed against a fourteen-year-old girl, and for one count of gross sexual imposition allegedly committed against a fifteen-year-old girl. The matter proceeded to a jury trial on September 18, 2002.
 {¶ 3} With regard to the charge involving the fourteen-year-old girl, the state's evidence demonstrated that the girl, her father, his girlfriend, and the girlfriend's children were living at a house on Hancock Avenue in Cleveland with the defendant. The girl testified that the defendant is her godfather and that in October or November 2001, he tried to get her to join the "Dick `em down" club. The girl explained that the club members' main objective is to have sex with the most women, and that in order to be admitted, she would have to sleep with its president, the defendant. The girl further testified that one night in November or December 2001, she had fallen asleep on the couch in the downstairs livingroom with a two year-old who also lived a the Hancock Avenue House. The girl stated that she was sleeping on her stomach and the two-year-old was asleep at the other end of the couch. At some point during the night, the two year-old had been moved from the couch. The defendant then sat where the two-year-old had been and placed the girl's legs over his lap. The girl testified that as she began to awaken, she felt the defendant touching her leg, then touching vaginal area over her clothing. By the time she was fully awake, he was touching her vaginal area under her clothing. The girl further testified that after she awoke, the defendant pretended to be sleeping and moved his hand away, and she went to the dining room. At this point, her father's girlfriend, Sandra Khalaf, came downstairs to get the two year-old and asked the older girl what was wrong. She did not tell anyone what had happened until a few months later.
 {¶ 4} The girl further testified that she warned the fifteen year-old girl who later became the complainant in the second incident, to stay away from the defendant.
 {¶ 5} The fourteen-year-old girl's family subsequently moved to West Virginia. When they returned to Cleveland in March 2002, she learned of the incident allegedly involving the fifteen year-old and went to the police to "help out" the second complainant.
 {¶ 6} Also, with regard to the charge set forth in the first count of the indictment involving the fourteen year-old girl, Sandra Khalaf testified that on the night of the incident, she observed the girl asleep on the couch with the two year-old. At around 3:00 a.m., she heard the two year-old cry. She went downstairs and noticed that the two year-old was on the floor and that the defendant was sitting next to the fourteen year-old and had one of her legs draped across his lap. She returned upstairs to prepare a place for the two year-old to sleep, then came back downstairs to get the child. After bringing the two year-old upstairs, she came downstairs for a third time to tell the fourteen year-old to go to sleep in her own bedroom. By this time, the fourteen year-old was sitting in the dining room. According to Khalaf, the girl appeared frightened but would not discuss the incident until the family had moved to West Virginia. With regard to the second count of the indictment involving the fifteen year-old girl, the state's evidence demonstrated that the fifteen year-old girl lived with her mother on Hancock Avenue and that her father lived across the street with the defendant and the defendant's girlfriend. The fifteen year-old testified that prior to the incident, while she and the fourteen year-old were smoking marijuana with the defendant, he invited them to join the "Dick `em down" club. She further stated that the fourteen year-old had warned her to be careful around the defendant.
 {¶ 7} Later, in February 2002, defendant's girlfriend, Stacey Dowling, invited her to come over to drink with her. The girl joined her father, her father's friend Ronnie, Dowling, defendant, and another friend named Doris at the house where defendant lived. The group drank brandy and vodka. The fifteen year-old drank shots and conversed with the defendant about his relationship with Dowling. As the party ended, Dowling called the girl's mother and asked if the girl could spend the night there. Her mother permitted the girl to stay but reminded her that she had to be at school the following day.
 {¶ 8} The girl then took a shower, changed into pajamas and watched television in a downstairs bedroom. Dowling asked the defendant to come upstairs with her but he did not immediately do so. According to the fifteen year-old, the defendant came in to her room to talk to her. He then went upstairs to Stacey's room and the fifteen year-old went to sleep. When she awoke, she felt someone touching her thigh, then touching her vaginal area over her clothing, and she jumped up and ran to Dowling.
 {¶ 9} The girl did not see the person who had touched her but believed that it was defendant. She told Dowling what had happened, then told her father the next morning. She went to her mother's house to speak with her but her mother was not home, and she reported the matter to her sister, Misty. Misty later reported the matter to the girls' mother, who then called the police.
 {¶ 10} The fifteen year-old girl subsequently spoke to Det. Alan Strickler of the Cleveland Police sex crimes unit, and also informed him of the incident involving the fourteen year-old girl. Stricker took statements from the girls and also spoke with the defendant. Defendant denied the incident and explained that his landlord, a relative of one of the girls, was attempting to evict him from the Hancock Avenue home.
 {¶ 11} The defense presented the testimony of Karen Boyd. Boyd testified that the property was owned by her mother. Through a power of attorney, Boyd had leased it to the defendant. Boyd's sister subsequently obtained a new power of attorney and wanted to evict the defendant. According to Boyd, her sister did not like defendant because he refused to obtain drugs for her.
 {¶ 12} The matter was submitted to the jury and defendant was convicted of both counts of gross sexual imposition. The trial court sentenced him to concurrent one year terms of imprisonment. He now appeals and assigns six errors for our review. For the sake of convenience, we shall address defendant's assignments of error out of their predesignated order.
 {¶ 13} Defendant's second assignment of error states:
 {¶ 14} "The trial court erred by failing to dismiss on its own motion the charges of gross sexual imposition when the state failed to establish the element of force."
 {¶ 15} Within this assignment of error, defendant asserts that his conviction must fail because the state did not establish the element of force needed to establish a violation of R.C. 2907.05(A)(1).
 {¶ 16} As an initial matter we note that the failure to timely file a Crim.R. 29(A) motion during a jury trial does not waive an argument on appeal concerning the sufficiency of the evidence. See Statev. Jones (2001), 91 Ohio St.3d 335, 346, 2001 Ohio 57, 744 N.E.2d 1163;State v. Carter (1992) 64 Ohio St.3d 218, 223, 1992 Ohio 127,594 N.E.2d 595. In both Jones and Carter, the Ohio Supreme Court stated that the defendant's "not guilty" plea preserves his right to object to the alleged insufficiency of the evidence. Id. Moreover, the United States Supreme Court has held that the Due Process Clause of theFourteenth Amendment to the United States Constitution protects a defendant in a criminal case against a conviction "* * * except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship (1970), 397 U.S. 358,364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375. Accord State v. Thompkins
(1997), 78 Ohio St.3d 380, 386-387, 1997 Ohio 52, 678 N.E.2d 541 (because "`a conviction based on legally insufficient evidence constitutes a denial of due process[.]'").
 {¶ 17} In proceeding to the merits of this assignment of error, we note that in evaluating a challenge to the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 18} Gross sexual imposition is defined in R.C. 2907.05(A)(1) as follows:
 {¶ 19} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 20} "1. The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force. * * * *."
 {¶ 21} Pursuant to R.C. 2907.01(B) "`Sexual contact' means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."
 {¶ 22} "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing. R.C.2901.01(A)(1). However, pursuant to R.C. 2907.05(C), "A victim need not prove physical resistance to the offender in prosecutions [for gross sexual imposition]."
 {¶ 23} With regard to whether any rational trier of fact could have found the essential elements of force proven beyond a reasonable doubt in this instance, we acknowledge that perpetrators who engage in sexual conduct with another who is asleep or otherwise unable to appraise or control the nature of his or her conduct are typically prosecuted for sexual battery in violation of R.C. 2907.03(A)(2) or (3), an offense which does not list force as an essential element. See State v. Tollivar
(July 31, 1997), 8th App. No. 71349. Nonetheless, this Court has previously determined that the element of force is present when a defendant touches the genitals of a person who is asleep, and physically exerts force to accomplish the offense. In State v. Sullivan (Oct. 7, 1993), 8th Dist. No. 63818, the sleeping victim awoke to find the defendant performing oral sex on her. In finding the requisite element of force present, this Court noted that "any" compulsion could establish force as defined in the statute, and observed that the evidence demonstrated that in committing the offense, the defendant had removed the victim's clothing and repositioned her body. Similarly, in State v.Lillard (May 23, 1996), 8th App. No. 69242, this Court found the element of force present where the defendant "used physical exertion to position [the victim's] robe and legs . . ."
 {¶ 24} Applying the foregoing with regard to defendant's conviction for gross sexual imposition on the fourteen year, we note that the state's evidence demonstrated that defendant waited until the girl had fallen asleep, sat next to her on the couch and placed her legs on his lap then displaced her clothing. We find that viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found the essential element of force proven beyond a reasonable doubt.
 {¶ 25} With regard to the offense involving the fifteen year-old, we note that the state presented evidence that when the girl awoke, the defendant was touching her genitals over her clothing. There was no evidence that the defendant applied any force in relation to her body and/or clothing, and we therefore conclude, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could not have found the essential element of force proven beyond a reasonable doubt. The state urges us to apply the principles enunciated in State v.Eskridge (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, because the girl stated that she considered the defendant to be her godfather after her first godfather died. The state further notes that Eskridge was applied in State v. Rutan (Dec. 17, 1997), Franklin App. No. 97APA03-389, a case involving a defendant who was an adult confidant who permitted his teenage victims to drink alcohol and smoke marijuana.
 {¶ 26} In Eskridge, supra, the Supreme Court recognized that "the force and violence necessary to commit the [sexual offense] depends upon the age, size and strength of the parties and their relation to each other," and that the real test of force is whether the "victim's will was overcome by fear or duress." Although subsequent cases have extendedEskridge to matters involving other adults who hold a position of parental authority over minor victims, see, e.g., State v. Vaughn (1995),106 Ohio App.3d 775, 667 N.E.2d 82 ("surrogate father-son relationship"), we can find no basis for applying the lesser showing of force in this instance, as there was no evidence that the defendant held a position of authority over this victim, or that the contact occurred due to fear or duress. Rather, as noted previously, the girl testified that the offense occurred as she slept and that, as she became aware of it, she immediately left the area. Accordingly, in the absence of evidence going to the essential element of force, the conviction as to this count of the indictment cannot stand.
 {¶ 27} This assignment of error is well-taken in part.
 {¶ 28} Defendant's first assignment of error states:
 {¶ 29} "Appellant was denied his effective assistance of counsel guaranteed by Article 1, Section 10 of the Ohio Constitution and theSixth and Fourteenth Amendments to the Constitution when his attorney failed to make a motion for acquittal under Crim.R. 29 and failed to object to improperly admitted hearsay evidence."
 {¶ 30} The standard of review for ineffective assistance of counsel requires a two-part test and is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "The defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland at 687-688, 104 S.Ct. at 2064,80 L.Ed.2d at 693. The defendant must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
 {¶ 31} Applying this standard to the defendant's contention that his trial counsel was ineffective in failing to move for acquittal of the charges due to lack of evidence of force, we conclude that our disposition of the previous assignment of error renders this claim moot.
 {¶ 32} With regard to defendant's additional contention that his trial counsel was ineffective in failing to object to: (1) evidence of the second victim's hearsay statements to Stacy Dowling, her sister, and her father of what had allegedly happened; (2) testimony from the second victim that the first victim warned her to watch out for defendant because he is a sick person; (3) testimony from the second victim's mother describing the manner in which she had become aware of the incident and learned that her daughter wanted to speak with her because defendant had touched her; and (4) testimony from Det. Strickler as to the contents of his interviews with the two girls.
 {¶ 33} In analyzing these claims, we note that the trial court has broad discretion in the admission or exclusion of evidence. State v.Sage (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of syllabus. Absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. State v. Martin (1985), 19 Ohio St.3d 122, 129, 19 OBR 330, 336,483 N.E.2d 1157, 1164.
 {¶ 34} We further note that hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally not admissible unless the evidence meets one of the recognized exceptions to the hearsay rule. Evid.R. 802. Evid.R. 803(2) allows the admission of hearsay under the "excited utterance" exception, which is defined as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." An excited utterance is one in which the declarant was under the excitement of a startling event and, therefore, the statement was not the product of reflection. State v. Taylor (1993), 66 Ohio St.3d 295, 300, 612 N.E.2d 316,320. There is no per se amount of time between the occurrence and the statement after which a statement can no longer be considered to be an excited utterance; the central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may not be a result of reflective thought. Id. at 303,612 N.E.2d at 322. The fact the statements were not contemporaneous with the incident does not take it out of the excited utterance exception. Statev. Baker (2000), 137 Ohio App.3d 628, 739 N.E.2d 819.
 {¶ 35} We further note that in State v. Thomas (1980),61 Ohio St.2d 223, 232, 15 Ohio Op.3d 234, 400 N.E.2d 401, the Supreme Court of Ohio stated that "extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed." When the testimony is offered to explain the subsequent investigative or other activities of the witnesses and not offered to prove the truth of the matter asserted, the testimony is admissible. Id.
 {¶ 36} Applying the foregoing to the categories of evidence challenged herein, we note that we have reversed defendant's conviction for the second count of gross sexual imposition. Accordingly, because the first, second and third challenges relate to evidence offered to establish that offense, they are hereby moot. In any event, the second victim's statements to Stacy Dowling, her sister and her father were properly admitted as excited utterances. Accordingly, defendant's trial counsel did not err in failing to object to evidence of those statements. Further, we note that even if this testimony was not considered an excited utterance exception, prejudice to the defendant would be absent because, as this court has noted:
 {¶ 37} "The pertinent testimony elicited was merely a recitation of events already described by the complainant. The jury was free to assess [the victim's] credibility, and although the elicited hearsay testimony gave more weight to her account, its introduction cannot be said to be either unreasonable, arbitrary or unconscionable. Furthermore, the testimony of the complainant alone was sufficient enough to convict. As a result, the admission of such testimony does not rise to the level of abuse of discretion." State v. Kebe (Nov. 12, 1998), Cuyahoga App. No. 73398, 1998 Ohio App. LEXIS 5410.
 {¶ 38} With regard to the fourth category of evidence challenged herein, we conclude that these extrajudicial statements were not offered to explain the truth of the matter asserted but rather, to explain the actions of the persons to whom the statements were directed. This evidence is therefore not hearsay under State v. Thomas, supra. Moreover, in State v. Griffin, 8th Dist. App. No. 80499, 2002 Ohio 4288, this court considered a similar evidentiary challenge and stated:
 {¶ 39} "Out-of-court statements made by the victim to her mother and the police, while hearsay, constitute harmless error in light of the fact that the victim testified to the same matters which were the subject of the out-of-court statements she made to the MOV and police. Crim.R. 52(A). Furthermore, plain error is not demonstrated because, by virtue of the victim's testimony which substantially mirrored her out-of-court statements recounted by the other witnesses, the outcome of the trial would not have clearly been different but for the alleged error. Crim.R. 52(B)."
 {¶ 40} In accordance with the foregoing, this portion of the assigned error is without merit.
 {¶ 41} Defendant's third assignment of error states:
 {¶ 42} "The state denied Appellant his right of due process when it erroneously elicited inflammatory and prejudicial evidence of his prior convictions."
 {¶ 43} Within this assignment of error, defendant asserts that the trial court erred in permitting admission of evidence that Stacey Dowling had obtained a restraining order against him, that he had been arrested for felonious assault and for menacing, and that he sold marijuana.
 {¶ 44} Evidence of prior bad acts is governed by Evid.R. 404(B) which states:
 {¶ 45} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also,State v. Lowe (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616, 619, certiorari denied (1989), 490 U.S. 1075, 109 S.Ct. 2089,104 L.Ed.2d 653, citing State v. Broom (1988), 40 Ohio St.3d 277, 282-83,533 N.E.2d 682. Evidence of other crimes may be presented when "they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime charged. State v.Wilkinson (1980), 64 Ohio St.2d 308, 415 N.E.2d 261. If the other admissible evidence, standing alone, constitutes overwhelming proof of guilt, the error is harmless. State v. Zuern (1987), 32 Ohio St.3d 56,60-61, 512 N.E.2d 585, 590; State v. Williams (1983), 6 Ohio St.3d 281, 6 OBR 345, 452 N.E.2d 1323, paragraph six of the syllabus.
 {¶ 46} In this instance, the bulk of the other act evidence either came from Dowling or pertained to defendant's relationship to her. Because she was a witness as to the allegations of the second count of the indictment and because we have reversed this conviction, defendant's challenge to this other act evidence is moot. As to whether the remaining other act evidence was prejudicial to defendant's conviction under the first count of the indictment, we note that the state presented compelling evidence of this offense which was essentially unrefuted. Accordingly, we hold that admission of this evidence was harmless.
 {¶ 47} This assignment of error is without merit.
 {¶ 48} Defendant's fourth assignment of error states:
 {¶ 49} "The Appellant's intimidation conviction is against the manifest weight of the evidence."
 {¶ 50} Within this assignment of error, defendant asserts that his convictions for gross sexual imposition are against the manifest weight of the evidence and that the jury lost its way in finding that the requisite element of force was established. This assignment of error is moot insofar as it challenges defendant's conviction on the second count of the indictment.
 {¶ 51} With regard to defendant's conviction on the first count, we note that, in determining whether a conviction is against the manifest weight of the evidence, the appellate court reviews the record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172, 20 Ohio OBR 215, 485 N.E.2d 717, citing Tibbs v. Florida (1982), 457 U.S. 31,72 L.Ed.2d 652, 102 S.Ct. 2211. An appellate court should vacate a conviction and grant a new trial only when the evidence weighs strongly against the conviction. State v. Martin, supra. In addition, the reviewing court must be aware that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
 {¶ 52} In this matter, the state presented evidence that defendant moved the two year-old from her position on the couch then sat beneath the fourteen year-old's legs, repositioned them and moved her clothing away from her vagina. While defendant presented some evidence that the charges were brought in order to facilitate his removal from the residence, he did not directly refute the evidence against him. Accordingly, we are unable to conclude that the evidence clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 53} This assignment of error is without merit.
 {¶ 54} Defendant's fifth assignment of error states:
 {¶ 55} "The trial court erred by imposing a penalty based on a belief that the offense was a felony of the first degree, when in fact the record supports the conclusion that it was a felony of the fourth degree."
 {¶ 56} In this assignment of error, defendant asserts that the trial court erred in determining that he committed a third degree felony because he was convicted of violating R.C. 2907.05(A)(1).
 {¶ 57} R.C. § 2907.05 defines the offense of gross sexual imposition and provides in relevant part as follows:
 {¶ 58} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
 {¶ 59} "(1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force. * * *
 {¶ 60} "(B) Whoever violates this section is guilty of gross sexual imposition. Except as otherwise provided in this section, a violation of division (A)(1), (2), (3), or (5) of this section is a felony of the fourth degree. If the offender under division (A)(2) of this section substantially impairs the judgment or control of the other person or one of the other persons by administering any controlled substance described in section 3719.41 of the Revised Code to the person surreptitiously or by force, threat of force, or deception, a violation of division (A)(2) of this section is a felony of the third degree. A violation of division (A)(4) of this section is a felony of the third degree."
 {¶ 61} In this matter, the transcript of the proceedings clearly demonstrates that the trial court correctly determined that defendant had been convicted of violating R.C. 2907.05(A)(1), a fourth degree felony. (Tr. 533-534). The court also correctly applied the factors listed in R.C. 2929.13(B)(1) before rejecting the sanction of community control. (Tr. 543). See State v. Kawaguchi (2000), 137 Ohio App.3d 597, 605,739 N.E.2d 392. Nonetheless, the court did not determine that at least one of nine enumerated factors set forth in R.C. 2929.13(B)(1) was applicable and did not specifically find that a prison term is consistent with the purposes and principles of sentencing. R.C. 2929.13(B). Accord R.C. 2929.19(B)(2)(a) which requires states the court to make a finding that gives its reasons for selecting the sentence imposed "* * * If it imposes a prison term for a felony of the fourth or fifth degree * * *, its reasons for imposing the prison term, based upon the overriding purposes and principles of felony sentencing set forth in section 2929.11
of the Revised Code, and any factors listed in divisions (B)(1)(a) to (h) of section 2929.13 of the Revised Code that it found to apply relative to the offender." Moreover, because the court speaks only through its journal, Andrews v. Board of Liquor Control (1955), 164 Ohio St. 275,131 N.E.2d 390, paragraph three of the syllabus; Atkinson v. Grumman OhioCorp. (1988), 37 Ohio St.3d 80, 523 N.E.2d 851; State ex rel. Worcesterv. Donnellon (1990), 49 Ohio St.3d 117, 551 N.E.2d 183; State v. King
(1994), 70 Ohio St.3d 158, 1994 Ohio 412, 637 N.E.2d 903; and the journal entries prepared in this matter erroneously indicate that defendant was convicted of a third degree felony, we conclude that this matter must be remanded for re-sentencing.
 {¶ 62} This assignment of error is well-taken.
 {¶ 63} Defendant's sixth assignment of error states:
 {¶ 64} "The trial court erred by sentencing defendant to consecutive prison terms in violation of R.C. 2929.14(E)(4) and R.C.2929.19(B)(2)(c)."
 {¶ 65} In that this court has reversed defendant's conviction on the second gross sexual imposition charge, this assignment of error is moot and will not be addressed herein.
 {¶ 66} Defendant's conviction under the first count of gross sexual imposition is affirmed and his conviction under the second count is reversed, and the matter is remanded for re-sentencing.
ANNE L. KILBANE, P.J., and ANTHONY O. CALABRESE, JR., J., concur.