DECISION.
{¶ 1} Defendant-appellant Lindsey Brotherton was arrested on a charge of attempted theft under R.C. 2923.02 and a charge of theft without consent of the owner under R.C. 2913.02 in regard to two incidents on the University of Cincinnati's campus on July 21, 2004. Brotherton maintains that her trial counsel was ineffective because of a failure to (1) file a motion to suppress the photo-array identifications by the victims, (2) call an additional alibi witness, or (3) oppose the joinder of the offenses. But due to the reliability of the eyewitness identifications, the credibility of the victims, and the common scheme of the crimes, her trial counsel was not ineffective.
 I. The Not-So-Clever Purse Snatcher {¶ 2} On July 21, 2004, between 5:00 and 5:30 PM, Holly Sizemore was typing a paper in the computer labs in Langsam Library when she was approached by a woman asking for help to log on to the computer system. Sizemore explained the procedures twice, but the woman came over a third time to again ask for assistance. The woman sat close to Sizemore, had a red jacket over her arm, and leaned over Sizemore's open book bag. The conversation lasted five to ten minutes, but the woman left without ever logging on to the computer system. When Sizemore looked for her student identification card twenty minutes later, she realized that her wallet had been stolen from her book bag.
 {¶ 3} Sizemore alerted the library staff and then the University of Cincinnati police. Sizemore provided a description of a 5'5" skinny female with long strawberry-blonde hair, pale skin, and freckles on her face. A library staff member suggested Brotherton to the police as someone who matched that description. Hours later at the police station, Sizemore was shown a photo array with six photos. She identified Brotherton as the woman who had leaned over her book bag in the computer lab.
 {¶ 4} On the same day, around 5:30 PM in Linder Hall Room 214, Donna Dykes was studying in an empty classroom with her purse at her feet. A woman approached Dykes and knelt down at her feet with a red jacket draped over her arm. Dykes found this peculiar because there were approximately 50 chairs available in the classroom. The woman asked Dykes about her classes, professors, and any insight she could give about other classes. During the conversation, Dykes was shocked to watch the woman maneuver her jacket over the top of Dykes's purse. When the conversation ended, the woman picked up Dykes's purse under her jacket. Dykes immediately told the woman to drop the purse. The woman did so and then ran out of the classroom. Dykes called the police from a classroom phone.
 {¶ 5} When the University of Cincinnati police officers arrived, Dykes provided a detailed description of the suspect: 5'5" female with thin build, strawberry blonde hair that fell below the shoulders, odorous breath, and two crooked front teeth. Dykes also described what the woman was wearing: a sleeveless knee-length floral-print sundress, sandals, and a hooded sweatshirt/jacket over her arm. Dykes filled out a statement at the police station and went home. A week later, she went back to the station to view a photo array. Without hesitation, Dykes identified Brotherton as the perpetrator.
 {¶ 6} At a bench trial, the prosecutors called the two victims and the police detective who handled the case. Brotherton asserted an alibi defense and provided three co-workers who testified that she was working in West Chester during the incidents in question. The trial court found the victims to be more credible than the alibi witnesses and found Brotherton guilty of attempted theft[1] and theft without the consent of the owner.[2]
 {¶ 7} Brotherton now appeals her conviction, arguing that she received ineffective assistance of counsel. Brotherton maintains that her trial counsel was ineffective because of a failure to (1) file a motion to suppress the photo-array identifications by the victims, (2) call an additional alibi witness, or (3) oppose the joinder of the offenses.
 II. Motion to Suppress Photo Arrays {¶ 8} In Strickland v. Washington, the United States Supreme Court enunciated the two-prong standard for evaluating claims of ineffective assistance of counsel.[3] When a defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.[4]
There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[5]
The Court further stated that counsel's performance must have prejudiced the defense so as to deprive the defendant of a fair trial.[6] This means that the "defendant must [also] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."[7]
 {¶ 9} Brotherton alleges that her attorney was ineffective for failing to move to suppress the photo identifications. She believes that the photo arrays used during the eyewitness identification procedures were overly suggestive and failed to include photographs of any other UC students. Brotherton's claim is not well taken. It is not per se ineffective assistance to fail to move to suppress evidence.[8] Even if such a motion should have been filed and the complained-of evidence excluded, Brotherton must still demonstrate that she was prejudiced.[9]
 {¶ 10} In determining the admissibility of an eyewitness identification, a court must decide whether the identification procedure was impermissibly suggestive, and if so, whether, under the totality of the circumstances, the identification was reliable. To be reliable, there must not be "a very substantial likelihood of irreparable misidentification."[10] As the Ohio Supreme Court has noted, "where a witness has been confronted by a suspect before trial, the witness's identification of the suspect will be suppressed if the confrontation procedure was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances."[11]
 {¶ 11} "The rationale for excluding a tainted pretrial identification is to protect the defendant from misconduct by the state."[12] Thus, "when a witness has been confronted with a suspect before trial, due process requires a court to suppress her identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances."[13] The United States Supreme Court has held that the trial court must balance the suggestiveness of the identification procedures against the following factors: "(1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation."[14]
 {¶ 12} In the present case, the photo arrays shown to Sizemore and Dykes were not suggestive of Brotherton's guilt. The photo arrays consisted of six pictures of young Caucasian women who seemed to be about the same age and have long, straight, light-colored hair. All pictures were from the neck up. Additionally, when the factors of Manson v. Brathwaite are weighed, it becomes clear that the pretrial identification procedures associated with the eyewitness identification of Brotherton possessed sufficient indicia of reliability. During the occurrence of each crime, each victim had five to ten minutes to look at Brotherton. Both Sizemore and Dykes described the perpetrator — and the descriptions were dead-on of Brotherton's physical appearance. And both victims were absolutely certain upon viewing the photo arrays within a few days of the crimes that Brotherton was the woman who had stolen Sizemore's wallet and had attempted to steal Dykes's purse.
 {¶ 13} Thus, had Brotherton's attorney filed a motion to suppress the eyewitness identifications based upon the photo arrays, the motion would have been denied. The identification procedures in this case were not suggestive. Therefore, defense counsel was under no duty to file a feckless motion.
 III. The Fourth Alibi Witness {¶ 14} Brotherton further alleges ineffective assistance of counsel in her attorney's failure to call an alibi witness. Although trial counsel called her employer and two co-workers as alibi witnesses, Brotherton maintains that a fourth alibi witness should have been called. This witness was a businessperson who supposedly had a meeting with Brotherton at her place of employment during the incidents at UC.
 {¶ 15} Generally, counsel's decision whether to call a particular witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court.[15] In this case, trial counsel's decision against calling the additional alibi witness was reasonable trial strategy. Trial counsel called three alibi witnesses to the stand, introduced Brotherton's time sheet, and attempted to prove the alleged alibi. But at the end of evidence, the trial court found Sizemore's and Dykes's testimony to be more credible than the alibi witnesses. Thus, trial counsel was not ineffective for failing to call the fourth alibi witness.
 IV. Joinder {¶ 16} Finally, Brotherton believes that her trial counsel failed to provide effective assistance by failing to object to the joinder of the theft offenses. She maintains that trial counsel acquiesced to having both charges called for trial together and failed to object to inadmissible other-act evidence. But Brotherton was not prejudiced.
 {¶ 17} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." In fact, joinder is favored over multiple trials because it conserves time and expense, diminishes the inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials.[16]
 {¶ 18} Nonetheless, if it appears that a defendant could be prejudiced by joinder, a trial court may grant a severance under Crim.R. 14. As the Ohio Supreme Court noted in State v. Lott,
the prosecution can use two methods to negate such claims of prejudice. First, if one offense could have been introduced under Evid.R. 404(B) at the trial of the other offense, no prejudice could have resulted from joinder. This evidentiary rule recognizes that evidence of other crimes may "be admissible for * * * proof of motive, opportunity, intent, preparation, plan." Second, the state can refute prejudice by showing "that evidence of each of the crimes joined at trial is simple and direct."[17]
 {¶ 19} In the present case, both theft offenses were of the same character and constituted parts of a common plan. Both theft offenses occurred on the University of Cincinnati campus, were closely committed in place and time, and had the same modus operandi — a woman starting a conversation with the victims while using a jacket to conceal a theft. Because the offenses were related by time, day, location, and common scheme, we are not persuaded that Brotherton was prejudiced by the joinder of the offenses. Even if the charges had been separated, evidence of one offense would still have been admissible in the trial of the other. Her trial counsel was not ineffective for failing to move for a separation of the charges.
 {¶ 20} Thus we overrule Brotherton's assignment of error and affirm her convictions.
Judgment affirmed.
Gorman, P.J., and Sundermann, J., concur.
[1] R.C. 2923.02.
[2] R.C. 2913.02.
[3] See Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052.
[4] Id. at 687-688.
[5] Id.
[6] Id.
[7] Id. at 694.
[8] See State v. Madrigal (2000), 87 Ohio St.3d 378, 389,721 N.E.2d 52, citing Strickland, 466 U.S. at 697, 104 S.Ct. 2052.
[9] Id.
[10] See Manson v. Brathwaite (1977), 432 U.S. 98, 116,97 S.Ct. 2243, quoting Simmons v. United States (1968),390 U.S. 377, 384, 88 S.Ct. 967.
[11] See State v. Wogenstahl (1996), 75 Ohio St.3d 344, 363,555 N.E.2d 293.
[12] See State v. Brown (1988), 38 Ohio St.3d 305, 310,528 N.E.2d 523.
[13] See State v. Murphy (2001), 91 Ohio St.3d 516, 534,747 N.E.2d 765, quoting State v. Waddy (1992), 63 Ohio St.3d 424,438, 588 N.E.2d 819.
[14] See State v. Gross (2002), 97 Ohio St.3d 121, 126, 2002-Ohio-5524, 776 N.E.2d 1061, at ¶ 19, citing Manson,432 U.S. at 114, 97 S.Ct. 2243.
[15] See State v. Williams, 99 Ohio St.3d 493,2003-Ohio-4396, 794 N.E.2d 27.
[16] See State v. Thomas (1980), 61 Ohio St.2d 223, 225,400 N.E.2d 401; see, also, State v. Torres (1981),66 Ohio St.2d 340, 343, 421 N.E.2d 1288.
[17] See State v. Franklin (1991), 62 Ohio St.3d 118, 122,580 N.E.2d 1.